In re Richard W. LEPPER, Carolyn Lepper, Debtors.

Bankruptcy No. 79–1–1892.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

March 21, 1986.

Thomas Lackey, Chapter 7 trustee.

Walter Sawyer, Lexington Park, Md., for debtors.

## MEMORANDUM OF DECISION

### (Motion for Turnover)

PAUL MANNES, Bankruptcy Judge.

Thomas L. Lackey, a Chapter 7 trustee, seeks an order directing the debtors, Richard W. Lepper and Carolyn Lepper, to turn over certain property which the trustee alleges belongs to the Chapter 7 estate. At issue are accounts receivable derived from services performed by Mr. Lepper after the filing of the Chapter 13 petition on November 13, 1979, and before the April 5, 1984, order converting the case under Chapter 13 to a case under Chapter 7 and appointing the Chapter 7 trustee. The trustee urges that the relevant date for ascertaining property of the Chapter 7 estate is the date of conversion. The debtors urge the date of filing. The significance of the choice lies in § 541(a)(1) of the Bankruptcy Code, which provides that property of the estate be determined as of the commencement of a case, and § 541(a)(6), which excepts from the § 541(a)(1) definition "earnings from

services performed by an individual debtor after the commencement of the case," i.e., property just such as that at issue.[1]

The trustee argues that the debtors' best interests actually lie in defining the Chapter 7 estate as of the date of conversion despite what the debtors say they want. He urges that,

> In a case such as that before the Court where conversion occurs *years* after the date of the filing of the case, it seems unfair and impractical to hold the debtor accountable for the assets which he held at the time of the filing of the case. To find that the property of the new Chapter 7 estate in this case is that which existed at the time of the filing of the Chapter 13 case will cause the debtors to be accountable for many assets, notably accounts receivable which existed at the time of the filing of the case, were collected and the funds used for expenses during the pendency of the case. In this case, the debtors will be forced to turn over thousands of dollars of assets for which they would be responsible, but which were disposed of years before the conversion of the case.

The issue at bar arises in large part because of conflicts between a literal reading of the Bankruptcy Code and perceived policy considerations. The conflicts are fueled by two ambiguities which some courts have found in the Code. First, does the voluntary case commenced under § 301 encompass the Chapter 13 phase and the later Chapter 7 phase, or is a new case commenced upon conversion to Chapter 7? Second, does the § 1306(a) definition of property of the estate, which is effective upon the filing of a case under Chapter 13, survive conversion of the case from Chapter 13 despite the limitation of § 103(h) or does conversion out of Chapter 13 render § 1306 inapplicable and leave § 541 for the definition of property of the Chapter 7 es-

tate? The court finds that the statute is clear on its face and that the ambiguities posed above do not exist in the statute.

Section 541(a)(1) of the Code provides that,

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located: ... all legal or equitable interests of the debtor in property *as of the commencement of the case.*

11 U.S.C. § 541(a)(1) (emphasis added). Section 302(a) provides that a joint case such as that at bar "is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse." The filing of the debtors' Chapter 13 petition on November 13, 1979, commenced a case under § 302(a) and created an estate under § 541(a). On November 13, 1979, the debtors had no interest in the accounts receivable at issue (the services not having been performed), therefore the § 541 estate created by the filing did not include such property. However, while the case was under Chapter 13, § 1306 operated to define the property of the estate (§ 103(h))[2] as follows:

> § 1306 *Property of the estate.*
>
> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the

---

**1.** All references to section numbers are to the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 *et seq.* (Public Law 95–598), except where the amendments under the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Public Law 98–353) are indicated.

**2.** § 103 *Applicability of chapters.*
(h) Chapter 13 of this title applies only in a case under such chapter.

case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first.

11 U.S.C. § 1306(a). This provision does not change the date of commencement of the case or the impact of § 541(a). It does add to the § 541 definition a specific category of property to be included in the Chapter 13 estate and therefore to receive the special treatment of other Chapter 13 provisions dealing with property of that estate such as §§ 1306(b), 1322(b)(9), and 1327(b) and (c), as well as the protection of the automatic stay as to property of the estate under § 362(a)(2), (3), (4), and (5). The accounts receivable at issue fell precisely into this specific category created by § 1306(a). But then, the Chapter 13 case was converted to a case under Chapter 7.

■■■■ The Code defines various effects of conversion, including,

### § 348. *Effect of conversion.*

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, *the commencement of the case,* or the order for relief.

11 U.S.C. § 348(a) (emphasis added). Pursuant to this provision, subsections (b) and (c) being inapplicable to the issue at bar, the court finds that conversion of the case from one under Chapter 13 to a case under Chapter 7 did not effect a change in the commencement of the overall case, which is defined under § 302 to be the filing of a petition under "a" chapter by an entity that may be a debtor under such chapter. The only petition which was filed was the filing on November 13, 1979. The commencement of the Chapter 7 case is deemed likewise to be on November 13, 1979. The court further finds that § 1306 was rendered inapplicable to the definition of property of the estate by conversion of the case out of Chapter 13 (*see* § 103(h)), and that at that point § 541 became the sole provision

for defining the Chapter 7 estate. In addition, § 541(a)(6), the effect of which had been superseded by § 1306(a) while the case was under Chapter 13, applies to the case under Chapter 7 upon conversion. The result is that because the debtors had no interest in the accounts receivable as of the commencement of the case on November 13, 1979, and also because the accounts receivable represent earnings from services performed by Dr. Lepper after November 13, 1979, that property is not included in the Chapter 7 estate. 11 U.S.C. § 541(a)(1) and (6).

The court finds that the above provisions are the only provisions necessary and relevant to determination of the case at bar and that they are clear and unambiguous. The court would go no further were it not for an erosion in the "plain meaning rule" described by the United States Court of Appeals for the Fourth Circuit in the case of *State Water Control Board v. Train,* 559 F.2d 921 (4th Cir.1977), as follows:

Relying on *Caminetti v. United States* (1917) 242 U.S. 470, 485, 37 S.Ct. 192, [194] 61 L.Ed. 442 appellee and amicus curiae suggest that we need not even consider the legislative history cited by appellant because the text of the statute is unambiguous. But, whatever may have been the rule at the time of *Caminetti* and *United States v. Missouri Pacific R. Co.* (1929) 278 U.S. 269, 278, 49 S.Ct. 133, [136] 73 L.Ed. 322 (setting forth the standard formulation of the "plain meaning rule"), it is now settled that available extrinsic interpretive aids may not be disregarded even though the statutory language appears to have a "plain meaning" which does not lead to an absurd result. *See, e.g., U. S. v. Amer. Trucking Ass'ns* (1940) 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345:

When aid to construction of the meaning of words, as used in the statute, is available there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination."

*Accord, Train v. Colorado Pub. Int. Research Group* (1976) 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (holding that court of appeals erred in relying on the "plain meaning" of a statute when the legislative history clearly indicated another meaning) and *McMann v. United Air Lines, Inc.* (4th Cir.1976) 542 F.2d 217, 221. *See also* Murphy, *Old Maxims Never Die: The "Plain Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts,* 75 *Col.L.Rev.* 1299 (1975).

However, the words of the statute remain the most persuasive indication of Congressional intent, and their apparent meaning should be rejected only on substantial, unambiguous evidence supporting a contrary interpretation.

559 F.2d at 924–25 n. 20 (further citations omitted). *See also, Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (no result allowed "demonstrably at odds with the intentions of [a statute's] drafters."). In the absence of any legislative history on the issue at bar, the court doubts that the

grounds on which other courts have reached conclusions contrary to that reached by this court fall into the category of "extrinsic interpretive aids" or "substantial, unambiguous evidence." Such grounds have involved policy arguments which are not stated in the legislative history of the statute and analysis of Code provisions which largely are not applicable to determination of the case at bar. However, the court will examine for substantiality and unambiguousness the basic contentions for a holding that the Chapter 7 estate is defined as of the date of conversion.

The court notes that the courts which in one form or another have considered the issue at bar are no longer, as has been said, "in general agreement that in a case converted from Chapter 13 to Chapter 7, the property of the estate consists of all property in which the debtor has an interest on the date of conversion." *In re Lindberg,* 735 F.2d 1087, 1090 (8th Cir.1984). In fact, the court's research reveals an even split in the decisions on the subject,[3] not including three cases which appear to reach results based on the facts and circumstances of those cases alone and do not appear to

**3.** *In re Lindberg,* 735 F.2d 1087 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984) (date of conversion controls homestead exemption).

*In re Kao,* 52 B.R. 452 (BC.Ore.1985) (date of conversion controls status of undistributed plan payments).

*In re Salamone,* 46 B.R. 19, 12 BCD 757, BLD ¶ 70244, 12 CBC2d 517 (BC E.D.N.Y.1984) (date of conversion controls status of post-petition accretions in value of property).

*In re Myrvold,* 44 B.R. 202, BLD ¶ 70130 (BC Minn.1984) (date of filing controls status of post-petition inheritance).

*In re Peters,* 44 B.R. 68, BLD ¶ 70132, 11 CBC2d 881 (BC M.D.Tenn.1984) (date of filing controls status of undistributed wage deductions).

*In re Richards,* 43 B.R. 554, 12 BCD 553, 12 CBC2d 270 (BC Minn.1984) (date of filing determines which exemption law applies).

*Genova v. Thurman (In re Thurman),* 43 B.R. 108 (BC Colo.1984) (date of filing controls exemptions).

*In re Bullock,* 41 B.R. 637, BLD ¶ 69973, 10 CBC2d 1292 (BC E.D.Pa.1984) (date of filing controls status of distributed wage deductions).

*In re Oliphant,* 40 B.R. 577 (BC N.D.Tex.1984) (date of filing controls right of setoff against post-petition credit union account funds).

*In re McFadden,* 37 B.R. 520 (BC M.D.Pa.1984) (date of filing controls status of undistributed wage deductions).

*In re Wanderlich,* 36 B.R. 710 (BC W.D.N.Y. 1984) (date of conversion controls undistributed pre-confirmation plan payments).

*In re Dennis,* 31 B.R. 128, 10 BCD 930, 8 CBC2d 1264 (BC M.D.Ga.1983) (date of conversion controls status of post-petition accretion in value of property).

*In re Tracy,* 28 B.R. 189, 10 BCD 541, 8 CBC2d 440 (BC Me.1983) (date of conversion controls status of undistributed wage deductions).

*In re Stinson,* 27 B.R. 18, 10 BCD 354, 8 CBC2d 16 (BC Ore.1982) (date of conversion determines which exemption law applies).

*In re Hannan,* 24 B.R. 691, 9 BCD 1151, BLD ¶ 68876, 7 CBC2d 750 (BC E.D.N.Y.1982) (date of filing controls status of post-petition accrual of damage claim, undistributed wage deductions, and post-petition account funds).

*In re Richardson,* 20 B.R. 490, 9 BCD 197, BLD ¶ 68721 (BC W.D.N.Y.1982) (date of conversion controls status of undistributed wage deductions).

stand for a general rule grounded in the Code.[4]

The court first considers the language of the statute as the basis upon which some courts have decided that the date of conversion controls the definition of the estate. Of the numerous courts which have dealt with the issue, none has more thoroughly examined the entire statutory context of the few provisions which this court has found to be dispositive than that in the case of *In re Wanderlich*, 36 B.R. 710 (BC W.D.N.Y.1984). Several sections of the Code led that court to conclude that the date of conversion must control definition of the Chapter 7 estate. For example, the court noted with respect to § 348 (Effect of conversion) that,

> Subsection (c) plainly authorizes the Chapter 7 trustee to assume or reject all pre-conversion executory contracts or unexpired leases of the Chapter 13 debtor, including those arising post-petition and even post-confirmation; an impossibility if those interests were not a part of the estate following confirmation.

36 B.R. at 714.[5] The *Wanderlich* court apparently presumed that unless *all* of the former Chapter 13 debtor's property became property of the estate upon conversion, the Chapter 7 trustee would have authority over none of it. The court did not consider the possibility that § 348(c) merely carves out from the former Chapter 13 debtor's property a category of interests which are within the Chapter 7 trustee's authority and therefore subject to the creditor protections of § 365. The writer suggests that § 348(c) means only what it says—it is very specific. The effect of the provision is to facilitate the trustee's management of the estate by setting a time for the assumption or rejection of executory contracts or leases. This power would not exist otherwise.

The *Wanderlich* court also noted with respect to § 348 that,

> Moreover, subdivision (d) hardly would elect to treat post-petition creditors of the Chapter 13 debtor as being pre-petition claimants after conversion to Chapter 7, if post-petition cash deposits or property which the debtor acquired as a result of credit transactions were not to be included in the debtor's Chapter 7 estate.

36 B.R. at 714. This is a policy argument. It is found in other decisions which have held that the date of conversion controls definition of the Chapter 7 estate. *See, e.g., In re Kao*, 52 B.R. 452, 453–54 (BC Ore.1985). The counterpart to this proposition was stated in the recent case of *In re Bobroff*, 766 F.2d 797 (3d Cir.1985), where the court held (albeit on grounds not appli-

**4.** *Resendez v. Lindquist (In re Resendez)*, 691 F.2d 397 (8th Cir.1982) (undistributed plan payments become property of the estate when voluntarily made to Chapter 13 trustee and cannot be exempted by the debtors upon conversion).

*In re Giambitti*, 27 B.R. 492 (BC Ore.1983) (undistributed plan payments cannot be recovered by the debtors).

*In re Doyle*, 11 B.R. 110, 7 BCD 1010, BLD ¶ 68029, 4 CBC2d 588 (BC E.D.Pa.1981) (conversion to Chapter 7 forces pre-petition creditor to whom debtor was in default under the Chapter 13 plan nevertheless to proceed against pre-petition security according to provisions of Chapter 7).

**5.** Section 348(c) provides:

§ 348 *Effect of conversion.*

(c) Sections 342 and 365(d) of this title apply in a case that has been converted under section 706, 1112, or 1307 of this title, as if the conversion order were the order for relief. The text of § 342 and § 365(d) under the 1978 Act were:

§ 342 *Notice.* There shall be given such notice as is appropriate of an order for relief in a case under this title.

§ 365 *Executory contracts and unexpired leases.*

(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

(2) In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

cable to the issue at bar) that tort causes of action which had accrued to a Chapter 13 debtor post-petition did not become property of the Chapter 7 estate upon subsequent conversion. The *Bobroff* court offered the following analysis of the effect of its ruling:

> This result is consonant with the Bankruptcy Code's goal of encouraging the use of debt repayment plans rather than liquidation. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News p. 5904. If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing "no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts...." *In re Hannan*, 24 B.R. 691, 692 (Bankr.E.D. N.Y.1982).

766 F.2d at 803–04. This court, in deciding that the converted Chapter 7 estate must be defined as of the time of filing the Chapter 13 petition, is not saying that the policy expressed in *Bobroff* is right and the one expressed in *Wanderlich* wrong.[6] The court states the competing arguments only by way of noting the diversity of the authority on the issue.

The issue under consideration has been addressed most often in the context of exemptions which the debtor in a Chapter 7 case seeks to claim based on what constitutes the estate at the time of conversion from Chapter 13. The issue arises because if the Chapter 7 estate is defined as of the date of filing the Chapter 13 petition, then post-petition property need not be exempt-

ed because under § 541(a)(6) it never becomes property of the estate. Furthermore, § 522(b)(2)(A) specifies the date of filing as the date for determining what property may be exempted and § 348(a) states that conversion does not effect a change in that date. The courts generally examine the exemption laws and their legislative history, considerations which are inapplicable to the facts before this court, in holding that the date of conversion controls what exemptions can be claimed. One court, in addition, noted the provision of Bankruptcy Rule 1019(1):

> When a chapter 11 or chapter 13 case has been converted or reconverted to a chapter 7 case:
>
> (1) *Filing of Lists, Inventories, Schedules, Statements.* Lists, inventories, schedules, statements of financial affairs, and statements of executory contracts theretofore filed shall be deemed to be filed in the chapter 7 case, unless the court directs otherwise. If they have not been previously filed, the debtor shall comply with Rule 1007 as if an order for relief had been entered on an involuntary petition on the date of the entry of the order directing that the case continue under chapter 7.

*See In re Lindberg*, 735 F.2d 1087, 1090 (8th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984). The *Lindberg* court reasoned as follows:

> The Advisory Note to Rule 1019(1) explains that when the debtor in a converted case has not previously prepared a schedule of assets, he must do so as if a chapter 7 petition had been filed *on the date of conversion*. Since debtors must claim exemptions in the schedule of assets (Bankruptcy Rule 4003(a)), Rule 1019(1) strongly suggests that the date of conversion controls what exemptions may be claimed in a converted case.

---

6. Indeed, the court's holding today, although consistent with *Bobroff*, will not put creditors back in the same position they would have occupied had the debtor not attempted Chapter 13 because in the pendency of the Chapter 13 case the creditor pool may increase (*see* 11 U.S.C.

§ 348(d)) or decrease through voluntary payment while the property of the estate available for liquidation and distribution to those creditors, defined as of the date of filing, remains the same or perhaps is dissipated.

*Id.* at 1090–91. *Contra, In re Peters,* 44 B.R. 68, 72 (BC M.D.Tenn.1984). This court disagrees with the suggestion and instead believes that the rule for a debtor who has not filed schedules, etc., is designed only to trigger the time limits imposed under Rule 1007(a)(2) and (c). Obviously, the 15-day clock could not start running from the date of filing in a converted case, therefore the rule provides that the clock start running from the date of entry of the order converting.

Another policy argument which has been advanced to justify a holding that the date of conversion controls what constitutes property of the estate is that,

> If the court were to conclude otherwise a debtor with substantial assets which would not be exempt in a chapter 7 case, could file a petition under chapter 13, obtain confirmation of a plan based solely upon payments to the trustee from future earnings, be revested with title to all of the non-exempt property, convert his case to chapter 7, retain all of the non-exempt property and obtain a discharge of not only those debts in existence at the time of the chapter 13 petition but also those incurred thereafter and prior to the conversion.

*In re Stinson,* 27 B.R. 18, 20 (BC Ore. 1982). This reasoning is premised on a certain reading of § 1327(b) of the Code, which provides that, "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." This court does not believe that § 1327(b) is applicable to resolution of the issue at bar, but to the extent that it is relevant, it would be rendered inapplicable by conversion of the case out of Chapter 13 in the same manner as § 1306. *See* § 103(h). This nullification of the effect of § 1327(b) upon conversion precludes the specter predicted by the *Stinson* court as surely as does the result reached by that court.

■ In summary, this court finds that the contentions restated above for a holding that the date of conversion from Chapter 13 controls the definition of the Chapter 7 estate are insubstantial and ambiguous. The insubstantiality results from analyses of statutory language which subvert the plain meaning of that language and policy arguments which are not grounded in specific legislative history. *See also, In re Peters,* 44 B.R. 68, 71 (BC M.D.Tenn.1984). *Peters* eloquently states the policy considerations which support a holding that the earlier date controls, pointing out that doing otherwise would penalize debtors who fall short of the plan. The encouragement for Chapter 13 debtors which the *Peters* court finds in the legislative history (H.R. Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787) belies any contrary unannounced legislative intent. This court therefore reiterates its holding in the case at bar that the date of filing the Chapter 13 petition is the relevant date for determining what constitutes property of the Chapter 7 estate upon conversion. If a debtor is unhappy with this result, that debtor has the opportunity to dismiss the case and file a second petition subject to the limitations of § 109(f), a part of the 1984 Amendments to the Bankruptcy Code. It therefore appears that the only parties hurt by this result are those granting debtors credit after the filing of the Chapter 13 petition and before conversion. Under § 348(d) they are treated as if their claim had arisen prior to the filing of the petition. Considering the 1984 Amendments to Title 11, and particularly new §§ 1325(b)(1) and 1329(a) (preamble), it seems unlikely that Congress considered that there would be many such creditors since the trustee or any unsecured creditor holding a prepetition claim can object to confirmation if the plan dedicates less than all of the debtor's projected disposable income, which veto-power effectively precludes payments outside the plan to post-petition creditors. Furthermore, those abusive debtors described in *Stinson, supra,* are now subject to the 1984 "watchdog" provision of § 707(b).

While this opinion involves a case under the Bankruptcy Code as enacted in 1978, the court finds that the result would be the

same after the 1984 Act. The 1984 Amendments address certain dissatisfactions and challenges with respect to the result herein. Nevertheless, the effect of the court's holding is to encourage Chapter 13 efforts by not penalizing debtors upon failure. The 1984 Amendments deal with the policy considerations expressed in *Wanderlich* and *Stinson* and result in elimination of the abuses foreseen by those courts.

An order will be entered in accordance with the foregoing.