In re Rand D. **MARSHALL**, f/d/b/a Central New York Builders, Debtor.

Patricia A. **BLOOD**, Plaintiff,

v.

Michael A. **WINEBURG**, Defendant.

Bankruptcy No. 84–00039.
Adv. No. 86–0126.

United States Bankruptcy Court, N.D. New York.

Sept. 25, 1987.

Wilcox & Wilcox, Oneida, N.Y., for plaintiff; William F. Wilcox, of counsel.

Wineburg, Weinstein, Scollan & Cannucciari, Auburn, N.Y., for defendant; Michael A. Wineburg, pro se, of counsel.

## MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This matter comes on before the Court as a result of an adversary proceeding commenced by Patricia A. Blood ("Plaintiff") against the Chapter 7 Trustee. Plaintiff seeks to reclaim $6,800.00 which she urges is erroneously held by the Trustee as property of the bankruptcy estate. The parties have agreed to certain of the material facts, and have asked the Court to resolve questions of law based upon a submitted stipulation of facts. Where appropriate, the Court has supplemented the parties' stipulation with facts from the various Court files. In view of the manner in which this proceeding is to be resolved, the following constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 7056 ("Bankruptcy Rules").

### FACTS

On January 16, 1984, Rand D. Marshall, f/d/b/a Central New York Builders ("Debtor") filed his petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp. 1987) ("Code"). The filing was and is, of course, a matter of public record. On June 4, 1984, Debtor's Chapter 13 plan was confirmed.

On November 7, 1985, during the course of Debtor's case, the Plaintiff tendered to the Debtor a personal check for $6,800.00 made payable to "Marshall Construction". The check was transferred as Plaintiff's initial payment under the terms of a contract between the parties for Debtor's future construction of an addition to Plaintiff's camp building located in Verona Beach, New York. At the time of the transfer, the Plaintiff had no actual knowl-

edge of the Debtor's continuing Chapter 13 case, nor had she questioned him about his prior bankruptcy experience.

Without informing the Chapter 13 Trustee, the Debtor deposited the Plaintiff's check in a bank account. This account was subsequently "frozen" by the bank at the request of one of Debtor's post-petition judgment creditors.

On November 20, 1985, Debtor's case was voluntarily converted to one under Chapter 7 pursuant to Code § 1307(a), and thereafter, the "frozen" bank account was released to the Chapter 7 Trustee. On December 20, 1985, pursuant to Bankruptcy Rule 1019(6), the Debtor filed his schedule of Post-petition Executory Contracts within which Plaintiff was listed. By Order of January 3, 1986, the Court set March 4, 1986 as the last day for creditors to file post-petition claims pursuant to Bankruptcy Rule 1019(7).

The Plaintiff did not file her proof of claim until October 14, 1986; on October 20, 1986, her adversary complaint was received and filed by the Bankruptcy Clerk's office. The Trustee has not contested the timeliness of the Plaintiff's proof of claim filing, nor the commencement of this adversary proceeding. In her complaint, styled as one for "reclamation of property", the Plaintiff urges that the sum of $6,800.00 be returned to her for the money constitutes "after-acquired property and as such, is exempt from the assets of the debtor's estate."

By Order entered March 26, 1986, the Court denied the Debtor's discharge on the grounds he had been granted a previous discharge in a bankruptcy case commenced within six years before the date of the filing of his Chapter 13 petition, *Mulford v. Marshall (In re Marshall)*, 74 B.R. 185 (Bankr.N.D.N.Y.1987). The Chapter 7 Trustee consequently has continued to liquidate the assets of the estate without the Debtor receiving any significant, corresponding benefits.

The parties submitted this matter for decision on July 16, 1987. The Trustee urges that the relevant date for ascertain-

ing what constitutes property of the Chapter 7 estate is the date of case conversion, relying upon *In re Kao,* 52 B.R. 452 (Bankr.D.Or.1985); *In re Wanderlich,* 36 B.R. 710 (Bankr.W.D.N.Y.1984); *In re Tracy,* 28 B.R. 189 (Bankr.D.Me.1983); *In re Richardson,* 20 B.R. 490 (Bankr.W.D.N.Y. 1982). The Plaintiff contends the appropriate date is the date of the Chapter 13 filing, relying upon, *Fitzsimmons v. Walsh (In re Fitzsimmons),* 725 F.2d 1208 (9th Cir. 1984); *Matter of Haynes,* 679 F.2d 718 (7th Cir.1982); *Hannan v. Kirschenbaum (In re Hannan),* 24 B.R. 691 (Bankr.E.D.N.Y. 1982). The Plaintiff additionally argues that the Debtor merely held the monies in trust, and as the Trustee only succeeds to the Debtor's interest in property, he similarly holds the property in trust for the Plaintiff.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.A. § 1334, and 28 U.S.C.A. § 157(a) and (b)(2)(A) (West 1976 & Supp.1987).

### CONCLUSIONS OF LAW

■ The date of filing of a debtor's Chapter 13 petition is the relevant date for determining what constitutes property of a future Chapter 7 bankruptcy estate upon conversion of the Chapter 13 case to one under Chapter 7.

### DISCUSSION

This proceeding concerns an issue which the Trustee acknowledges has resulted in a split of decisions across the country. The Court's research has uncovered at least twenty reported cases on the issue,[1] the review of which leads it to conclude that the cases holding the date of conversion to define property of the subsequent Chapter 7 estate, fail to account for and apply the unambiguous language of the Code. Because the Court is bound to give effect to the "plain meaning" of a statute in the absence of ambiguity, *United States v.*

*American Trucking Association,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940), *In re Hobaica,* 65 B.R. 693, 695 (Bankr.N.D.N.Y.1986), it is appropriate to first consider the applicable Code provisions.

Code § 541 provides,

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property *as of the commencement of the case.* (emphasis added).

The filing of the voluntary Chapter 13 petition on January 16, 1984 served to commence the Debtor's case, and also established the reference point for determining what property constituted property of his bankruptcy estate. The Debtor did not have an interest in the Plaintiff's money at this time, as their contract would not be executed for some twenty-two months in the future.

Accentuating Code § 541 is Code § 1306, a section applicable only to cases filed under Chapter 13. *See* Code § 103(h). Code § 1306 broadens Code § 541 by including in a Chapter 13 debtor's estate:

(1) all property of the kind specified in [Code § 541] that the debtor acquires *after the commencement of the case but before the case is* closed, dismissed, or *converted to a case under Chapter 7,* 11, or 12 of this title whichever occurs first; and

(2) earnings from services performed by the debtor *after the commencement of the case but before the case is* closed, dismissed, or *converted to a case under Chapter 7,* 11, or 12 of this title, whichever occurs first. (emphasis added).

The operative result of Code § 1306 in this case is that the $6,800.00 which Plaintiff paid to the Debtor as part of their contract, became property of the latter's

1. Most of these decisions have been compiled in *In re Lepper,* 58 B.R. 896, 899–900 n. 3, 4

(Bankr.D.Md.1986).

bankruptcy estate. Because the record is unclear whether the Debtor had commenced his obligations under the contract, the Court cannot declare that the money became part of the Chapter 13 estate due to Code § 1306(a)(2). But in any event, the operation of Code § 1306 re-defined the property as property of the bankruptcy estate during the course of the Debtor's Chapter 13 case. However, the continuing effect of Code § 1306 ceased as of the Debtor's voluntary conversion of the case, for as referenced above, the section applies only to Chapter 13 cases.

Code § 348 provides:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, *but,* except as provided in subsections (b) and (c) of this section, *does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.* (emphasis added).

Nothing in the Code or the legislative history surrounding its enactment suggests that conversion pursuant to this section changes the date on which a bankruptcy case is commenced. Voluntary cases under Chapters 7, 11, 12, and 13, regardless of whether converted to a case under a different chapter of the Code at a later date, are "commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." Code § 301. Consequently, the Debtor's current Chapter 7 case, the estate of which the Trustee is charged with administering under Code § 704, was "commenced" on January 16, 1984.

The Debtor's conversion of his Chapter 13 case to the present Chapter 7 case served to re-define the property of the bankruptcy estate available for liquidation within the original parameters of Code § 541. Because Code § 1306 is inapplicable to cases under Chapter 7, the Chapter 7 estate does not contain property acquired by the Debtor during the course of his Chapter 13 case, post-petition but pre-con-version. Whatever property interests the Debtor held on the date he filed his Chapter 13 petition are the interests to which the Trustee succeeds.

The Court recognizes its holding is at odds with others which have concerned the same or similar issue, but nevertheless believes it comports with the unambiguous language of the Code. Under such circumstances, the Court hesitates to adopt what amount to arguments of policy advanced by the Trustee, and in any event, equally meritorious policy considerations substantiate the Court's holding:

Chapters 7 and 13 are fundamentally different. Under Chapter 7, a debtor secures release from his debts in exchange for all assets he owned when he seeks such exculpation. Under Chapter 13, he agrees to commit some portion of his future income to the discharge of his debts (which explains why the definition of 'property of the estate' includes after-acquired property), and in exchange he retains possession of all his property, except as provided in his plan. In short, under Chapter 7, creditors are entitled to whatever are the assets of the debtor at the time he files for relief; under Chapter 13, the creditors get only whatever the debtor agrees to devote to the repayment of their debts out of his future income. When a Chapter 13 plan does not work out, the debtor has the privilege of converting to Chapter 7, and when he exercises that right, no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts by filing under Chapter 13.

*Hannan v. Kirschenbaum, supra,* 24 B.R. at 692.

■ The Court's decision does not, however, result in an automatic turnover of $6,800.00 to the Plaintiff, for questions of fact, not addressed by the parties in their stipulation, remain as to the tracing of the monies to the account turned over to the Trustee. Because the funds were in a bank account maintained by the Debtor, the presumption is that the monies therein

are property of the estate, absent a tracing establishing that, in fact, the sums still in the account are those which were received from the Plaintiff. The facts stipulated to by the parties do not address such salient matters as the name under which the account was maintained, the nature of the account (e.g. personal, business, etc.), the date of its creation, and detail of other deposits and/or withdrawals therefrom occurring post-petition, but pre-conversion. Of course, the Plaintiff does not have to prove that the Trustee holds the identical sums originally transferred; as a court of equity, the Court may follow the $6,800.00 through all the transformations it may have sustained as a part of the account, and still credit the Plaintiff in this amount. *Cf. Cavin v. Gleason,* 105 N.Y. 256, 262–63, 11 N.E. 504, 506–07 (1887) (tracing of assets in insolvent bank situation). However, as the Court has yet to be made aware even of the amount actually transferred to and currently held by the Trustee, it hesitates to order the Trustee's return of $6,800.00 when this sum may not even be held. Consequently, while the Court is in a position to reach the broader legal conclusion set forth above, specific information is not available at this time upon which to compel the Trustee to transfer to Plaintiff the sum demanded. The relevant facts will need to be set forth in a future fact stipulation, or determined as the result of an evidentiary hearing.

IT IS SO ORDERED.