**In re James Houston MANN, Debtor.**

**Bankruptcy No. 92–10712.**

United States Bankruptcy Court,
D. Vermont.

Sept. 29, 1993.

fornia, and thus whether it should be governed by New York or California law.

518

G. Glinka, Cabot, VT, for James Houston Mann (Debtor).

R.J. Obuchowski, Obuchowski & Reis, Bethel, VT, Chapter 7 Trustee (Trustee).

## MEMORANDUM OF DECISION ON POST–PETITION, PRE–CONFIRMATION, CHAPTER 13 PAYMENTS IN A CONVERTED CHAPTER 7

FRANCIS G. CONRAD, Bankruptcy Judge.

This contested matter [1] raises the single and specific question whether a trustee in a Chapter 7 case converted from Chapter 13 before confirmation may seize for the Chapter 7 estate undistributed, post-petition, pre-confirmation payments made by Debtor and held by the Chapter 13 trustee. We hold a trustee may not.

Debtor originally filed this case under Chapter 13 but voluntarily converted the case to Chapter 7 before a plan of reorganization was confirmed. Under 11 U.S.C. § 1326(a)(1), Debtor began making pre-confirmation payments to the Chapter 13 trustee from post-petition income. At the time of the pre-confirmation conversion to Chapter 7, the Chapter 13 trustee had accumulated $1,903.03 in such payments from Debtor. Despite the plain language of 11 U.S.C. § 1326(a)(2),[2] the Chapter 13 trustee felt compelled by F.R.Bkrtcy.P. 1019(4)[3] to turn over these accumulated payments to the Chapter 7 trustee. Although Debtor did not believe these post-petition payments to the trustee in the superseded case are property of the Chapter 7 estate in the first instance, in an exercise of prophylactic legal caution, Debtor nonetheless amended his exemptions to claim this money as exempt under 12 Vt.Stat.Ann. § 2740(7) (the "wild card").

Trustee objects to the claimed exemption, arguing that Debtor's accumulated pre-confirmation payments to the Chapter 13 trustee are post-petition property of the Chapter 7 estate, and that this property may not be exempted because it has "vested" in Debtor's creditors. In support, Trustee relies princi-

1. We have jurisdiction to hear this proceeding under 28 U.S.C. § 1334(b) and the general reference to this Court by the U.S. District Court for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (B), and (O). This Memorandum of Decision constitutes conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

2. 11 U.S.C. § 1326(a)(2) provides, in part:

... If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

Section 503(b) is not at play in this contested matter.

3. F.R.Bkrtcy.P. 1019(4), **Turnover of Records and Property**, provides:

After qualification of, or assumption of duties by the chapter 7 trustee, any debtor in possession or trustee previously acting in the chapter 11, 12, or 13 case shall, forthwith, unless otherwise ordered, turn over to the chapter 7 trustee all records and property of the estate in the possession or control of the debtor in possession or trustee.

pally on two recent cases;[4] one holding that after a *post*-confirmation conversion from Chapter 13 to Chapter 7, undistributed funds held by the Chapter 13 trustee must be disbursed in accordance with the confirmed plan; the other that a debtor may be precluded from exempting property turned over to the Chapter 7 trustee after converting from a Chapter 13 if there is bad faith by the debtor and/or prejudice to the creditors. Reflecting a congenial predilection for quotation marks, Trustee urges this Court to apply equitable principles to treat the creditors as having "vested" rights in these pre-confirmation payments because of a perceived "unfairness" in not distributing these funds to the creditors.

Debtor argues that 11 U.S.C. § 348 sets out in considerable detail what happens when a bankruptcy case is converted from one chapter to another. The first lettered paragraph, 11 U.S.C. § 348(a),[5] establishes the rule that the critical date in a converted case is the date the original petition was filed. The succeeding two paragraphs of the statute describe exceptional circumstances when the date of the order of conversion governs instead, none of which apply in this case. Thus, Debtor claims, under the plain language of 11 U.S.C. § 348(a), Debtor's Chapter 7 case is deemed by law to have been commenced and the petition filed when Debtor filed the original Chapter 13 petition.

Debtor reminds us that 11 U.S.C. § 541(a)(1) instructs, with certain exceptions, that a bankruptcy estate includes only such property as a debtor had an interest in "as of the commencement of the case," and not a debtor's earnings after the case has been commenced.[6] The accumulated fund is not property of a Chapter 7 debtor's estate because the date of the commencement of the debtor's Chapter 7 case predates the debtor's payments to the Chapter 13 trustee. In other words, Debtor contends the commencement of the Chapter 7 case relates back, by operation of law, to the date of the earlier Chapter 13 petition, and it is as of that earlier date that property of the estate, as defined by § 541(a)(1) is determined. The undistributed payments are not property of a converted Chapter 7 estate but are a debtor's property, as they would be had the debtor originally filed under Chapter 7, because the debtor would not have acquired its interest in post-petition income paid to and retained by the Chapter 13 trustee until after this date.

Accordingly, Debtor asserts, funds received from a debtor and held by a trustee pending confirmation of a plan of reorganization do not become property of the Chapter 7 estate after conversion of the case from Chapter 13.[7] As the commentaries confirm,

---

**4.** *See, In re Halpenny*, 125 B.R. 814, 816 (Bkrtcy.D.Hawaii 1991) (after a Chapter 13 plan has been confirmed then converted to Chapter 7, funds paid to the Chapter 13 trustee must be distributed under the provisions of the confirmed plan); *In re Burns*, 90 B.R. 301, 304–305 (Bkrtcy.S.D.Ohio 1988) (in a confirmed Chapter 13 plan, funds paid to Chapter 13 trustee are to be distributed upon conversion to Chapter 7 to Chapter 13 creditors under the terms of the confirmed plan).

**5.** 11 U.S.C. § 348(a) provides:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

**6.** *See also*, 11 U.S.C. § 541(a)(6), which specifically excludes "earnings from services performed by an individual debtor after the commencement of the case" from property of the estate.

**7.** For reliance, Debtor cites: *In re Payne*, 88 B.R. 818 (Bkrtcy.E.D.Tenn.1988); *In re de Vos*, 76 B.R. 157 (N.D.Cal.1987); *In re Lennon*, 65 B.R. 130 (Bkrtcy.N.D.Ga.1986); *In re Peters*, 44 B.R. 68 (Bkrtcy.M.D.Tenn.1984); *In re Bullock*, 41 B.R. 637 (Bkrtcy.E.D.Pa.1984); *In re McFadden*, 37 B.R. 520 (Bkrtcy.M.D.Pa.1984). Compare, *In re Bobroff*, 766 F.2d 797, 803–804 (3rd Cir.1985) (tort claim arising after Chapter 13 case was filed but before reconversion not property of debtor's Chapter 7 estate); *Hannan v. Kirschenbaum*, 24 B.R. 691 (Bkrtcy.E.D.N.Y.1982) (cause of action acquired between filing of Chapter 13 petition and conversion not property of Chapter 7 estate); *In re Marshall*, 79 B.R. 147 (Bkrtcy.N.D.N.Y. 1987) (post-petition, pre-conversion accounts receivable not property of Chapter 7 estate); *In re Lepper*, 58 B.R. 896 (Bkrtcy.D.Md.1986) (same); *Oliphant v. Amarillo Pantex Federal Credit Union*, 40 B.R. 577 (Bkrtcy.N.D.Tex.1984) (bank may not set off against money deposited after the Chapter 13 petition but before conversion to Chapter 7); *In re Horton*, 130 B.R. 326 (Bkrtcy. D.Colo.1991) (equity in automobile acquired during Chapter 13 case not property of estate upon

Debtor says, "most courts" have decided that property acquired after the Chapter 13 filing and before conversion to Chapter 7 does not become part of the Chapter 7 estate. 5 *Collier on Bankruptcy,* ¶ 1307.01[8] (15th ed. 1992).

Assuming that common sense will fail us, Debtor argues that its entitlement to funds paid to Trustee when the case was converted to Chapter 7, and no plan of reorganization has been confirmed, was clarified and reinforced in 1984 when Congress added 11 U.S.C. § 1326(a)(2). Under § 1326(a)(2), "(i)f a plan is not confirmed, the trustee shall return any such payment to the debtor...." By its express terms, this provision requires that the payments held by a Chapter 13 trustee be returned to the debtor if no plan has been filed at the time of the conversion.[8] Debtor asks us to recognize that a creditor's entitlement to the undistributed funds held by Trustee matures or "vests" only after a plan of reorganization that binds the debtor and the creditors has been confirmed.

Alternatively, if statutory construction fails, Debtor urges us to ignore equitable principles that appear to alleviate a perceived "unfairness" in delaying payment to creditors. There is nothing unfair, Debtor says, in turning Debtor's post-petition earnings paid to Trustee back to Debtor, because the creditors can have no legitimate expectation of payment until a plan has been confirmed and Trustee is authorized to disburse payments. Moreover, Debtor claims, it is fundamentally unfair to penalize a debtor for unsuccessfully attempting to reorganize in Chapter 13 rather than filing under Chapter 7. Indeed, Debtor says, if it commenced the case under Chapter 7, it is undisputed that these post-petition funds would not be property of the Chapter 7 estate. 11 U.S.C. § 541(a). Finally, the legislative history of Chapter 13 clearly encourages debtors to

reorganize rather than liquidate, H.R. No. 95–595, pp. 1–118, U.S.Code Cong. & Admin.News pp. 5787, 5963–6079, and it would therefore be senseless to punish a debtor whose reorganization failed by subjecting post-petition earnings to the claims of creditors when such earnings would not have been included in the estate had the debtor filed under Chapter 7 initially. See, *In re Shattuck,* 62 B.R. 14, 16 (Bkrtcy.D.N.H.1986).

Trustee points out that there is a split of authority on whether post-petition property paid to a Chapter 13 trustee, post-conversion to Chapter 7, belongs to the Chapter 7 estate. Trustee points to *In re O'Quinn,* 143 B.R. 408 (Bkrtcy.S.D.Miss.1992) for a detailed analysis of the rationales for the varied holdings and the split decisions, asking specifically that we adopt the rationale

> [that] funds [in a converted pre-confirmation Chapter 13 case] become property to the chapter 7 estate, not subject to any exemptions claimed by the debtor, and should be distributed in full to the creditors of the [Chapter 7] estate.

*Id.;* at 410 (parentheticals ours).

Trustee claims its position springs from a 1982 decision of the Eighth Circuit Court of Appeals in *Resendez v. Lindquist,* 691 F.2d 397 (8th Cir.1982), and the interplay of 11 U.S.C. §§ 541, 1306, and 348. Without wasting time, ink and paper, Trustee cites *In re Calder,* 973 F.2d 862 (10th Cir.1992), which states:

> The courts of appeals addressing this issue have held that upon conversion from Chapter 13 to Chapter 7 all property of the Chapter 13 estate—including after-acquired property that is part of the Chapter 13 estate pursuant to Sec. 1306(a)—is included in the Chapter 7 estate. See, *In re Lybrook,* 951 F.2d 136, 138 (7th Cir.1991) (holding that "the Chapter 13 estate passes

---

conversion to Chapter 7); *In re Hudson,* 103 B.R. 781 (Bkrtcy.N.D.Miss.1989) (judicial lienholder's lien does not extend to post-petition real property acquired before conversion to Chapter 7). A Chapter 13 trustee, of course, is required to retain payments "until confirmation or denial of confirmation of a plan," 11 § 1326(a)(2), though the debtor has an obligation to begin making the proposed payments within 30 days after filing the plan, 11 U.S.C. § 1326(a)(1).

**8.** *In re Brown,* 118 B.R. 1008 (Bkrtcy.E.D.Mo. 1990); *In re Milledge,* 94 B.R. 218 (Bkrtcy. M.D.Fla.1988); *In re Rutenbeck,* 78 B.R. 912 (Bkrtcy.E.D.Wis.1987); *In re Lennon,* 65 B.R. 130 (Bkrtcy.N.D.Ga.1986); *In re Richardson,* 20 B.R. 490 (Bkrtcy.W.D.N.Y.1982).

unaltered into Chapter 7 upon conversion"); *Armstrong v. Lindberg (In re Lindberg),* 735 F.2d 1087, 1090 (8th Cir.) (stating that "{t}he bankruptcy courts are in general agreement that in a case converted from chapter 13 to chapter 7, the property of the estate consists of all property in which the debtor has an interest on the date of the conversion"), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984); *Winchester v. Watson (In re Winchester),* 46 B.R. 492, 495 (Bankr. 9th Cir.1984) (stating that "logic dictates that the date of conversion [from chapter 13 to chapter 7] is the controlling date on which to determine ... property of the Chapter 7 estate"). But cf., *Bobroff v. Continental Bank (In re Bobroff),* 766 F.2d 797, 803 (3d Cir.1985) (suggesting in dicta that after-acquired property should not be part of the postconversion Chapter 7 estate).

The bankruptcy courts, however, are split on this issue. Some agree with *Lybrook, Lindberg,* and *Winchester.* See, e.g., *In re Marcus,* 128 B.R. 294, 296 (Bankr.D.Colo. 1991), *aff'd,* 140 B.R. 803 (Bankr.D.Colo. 1991); *In re Schmeltz,* 114 B.R. 607 (Bankr.N.D.Ind.1990); *In re Tworek,* 107 B.R. 666, 667 (Bankr.D.Neb.1989); *In re Wanderlich,* 36 B.R. 710, 715 (Bankr. W.D.N.Y.1984). Others have reached the opposite conclusion. See, e.g., *In re Horton,* 130 B.R. 326, 328 (Bankr.D.Colo.1991); *In re Gorski,* 85 B.R. 155, 156–57 (Bankr. M.D.Fla.1988); *Blood v. Wineburg (In re Marshall),* 79 B.R. 147, 150 (Bankr. N.D.N.Y.1987); *In re Lepper,* 58 B.R. 896, 898 (Bankr.D.Md.1986); see also, *Lepper,* 58 B.R. at 899, n. 3 (finding an even split in authority and stating that the courts are no longer, as stated in *Lindberg,* in "general agreement" on the issue); 5 *Collier on Bankruptcy,* ¶ 1307.01[8] (Lawrence P. King ed., 15th ed. 1992) (stating that "most courts" have decided that property acquired after the Chapter 13 filing and before conversion to Chapter 7 does *not* become part of the Chapter 7 estate).

This issue requires an analysis of the interplay between 11 U.S.C. Secs. 541, 1306, and 348. As stated by the bankruptcy court in *Lybrook:*

Section 541 provides that the bankruptcy estate is created upon the commencement of a case. It then identifies what becomes property of the estate and what is excluded from it. Section 1306 expands the Chapter 13 estate beyond its composition as described by Sec. 541. It includes not only the property that would otherwise become property of the estate under Sec. 541 but also essentially all property the debtor acquires after commencement of the case, until it is closed, dismissed or converted. In describing the effects of conversion, Sec. 348 does not directly address the composition of the bankruptcy estate. It states only that, with certain exceptions, conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. Sec. 348(a). *Robb v. Lybrook (In re Lybrook),* 107 B.R. 611, 612 (Bankr.N.D.Ind.1989), *aff'd, Lybrook v. Robb,* 135 B.R. 321 (N.D.Ind. 1990), *aff'd, In re Lybrook,* 951 F.2d 136 (7th Cir.1991).

We agree with the *Lybrook* court's analysis that "[a] proper reading of Sec. 348 indicates that it is not a source of disruption but, instead, preserves the continuity of the bankruptcy proceedings." 107 B.R. at 613. Furthermore, we agree that

{w}hen Sec. 348 is viewed as a source of continuity, the plain language of Sec. 541 easily becomes susceptible to the conclusion that the bankruptcy estate, following conversion from Chapter 13 to Chapter 7, is the Chapter 13 bankruptcy estate. The estate was created upon the commencement of the case. 11 U.S.C. Sec. 541(a). At the moment of creation, it essentially consisted of all of the property in which debtor had an interest. 11 U.S.C. Sec. 541(a)(1). The estate does not, however, remain static. It also includes "any interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C. Sec. 541(a)(7) (emphasis added).

Through Sec. 1306, the estate acquires an interest in the property debtor acquires between the date of the petition and the date of conversion. By its terms, Sec.

541(a)(7) is broad enough to include this post-petition property in the Chapter 7 bankruptcy estate, following conversion from Chapter 13. It is able to do so through a simple reading of its plain language, without resorting to strained or contorted interpretations of the consequences of conversion. Instead, it is merely a recognition that Sec. 348 "does not purport to alter or modify the provisions or applicability of sections 541 and 1306." *In re Wanderlich, supra,* 36 B.R. at 714. We also agree with the conclusion of the bankruptcy judge, *see, id.* at 614, and Judge Posner, who wrote on appeal for the Seventh Circuit, that "a rule of once in, always in is necessary to discourage strategic, opportunistic behavior that hurts creditors without advancing any legitimate interest of debtors," 951 F.2d at 137.

*In re Calder, supra,* 973 F.2d 862, 865–866 (10th Cir.1992).

Trustee also urges us to adopt a rationale that an apparent "unfairness" would occur by allowing Debtor to further delay payments to creditors. As stated in *Resendez, supra,*

> Since the debtor voluntarily made the payments in question to a Chapter 13 trustee for the benefit of creditors, it would be unfair to permit the monies to be now claimed as exempt under his Chapter 7 proceeding on the basis that they had not been distributed to the creditors. In other words, at this stage it would be unfair to the unsecured creditors.

*Id.,* at 399.

Finally, Trustee strongly suggests that we adopt a rationale similar to a third-party beneficiary theory that would essentially "vest" creditors with rights in the funds voluntarily paid to a Chapter 13 trustee. For reliance, Trustee points us to *In re Halpenny,* 125 B.R. 814 (Bkrtcy.D.Haw.1991) and *In re Burns,* 90 B.R. 301 (Bkrtcy.S.D.Ohio 1988). This rationale, Trustee claims, would prevent a debtor from further delaying its creditors with an opportunity to increase a debtor's exempt property. Such a rationale is especially important in those instances where a debtor is curing arrearages to its

secured creditors through payments to a Chapter 13 trustee, while continuing to receive the benefit of retainage and use of collateral, then only to convert and receive a return of the arrearage payments made.

## DISCUSSION [9]

Much has been made in the various arguments of the parties about "vesting" and exemptions. We ignore them today because it is only necessary to decide the pre-confirmation conversion issue today.

■ We have noted many times in the past that Courts cannot place their complete trust in the plain meaning of statutes. Legislatures necessarily enact general responses to social problems and cannot foresee the many factual circumstances that inevitably arise. *680 Fifth Avenue Assoc. v. Mutual Benefit Life Ins. Co. in Rehabilitation (In re 680 Fifth Avenue Assoc.; In re 54th and Fifth Land Partners),* 156 B.R. 726, 734, n. 12 (Bkrtcy.S.D.N.Y.1993). Congressional language is not an infallible proxy for Congressional intent and Courts must be mindful of Learned Hand's admonition not to "make a fortress out of the dictionary." *Lewis v. Grinker,* 965 F.2d 1206, 1215 (2d Cir.1992) (quoting, *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.), *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945)). But, as in all matters involving statutory construction, we must begin with the statute itself.

Section 1326(a)(2) was added under the Bankruptcy Amendment Act of 1984 by Pub.L. 98–353 on July 10, 1984, effective for cases filed 90 days after its enactment. It is unclear how this section affects any payments to a trustee upon conversion of a case. As one Court noted, the 1984 Amendments to the Bankruptcy Code have "a number of conflicting provisions and is confusing to say the least ... and there is no House or Senate report of any kind and no conference report." *Ledford v. Burns (Matter of Burns),* 90 B.R. 301, 303 (Bkrtcy.S.D.Ohio 1988). But it is clear on at least one point; and that is the duty of a trustee of a failed and unconfirmed plan.

---

9. The parties have requested that we treat this contested matter as a F.R.Bkrtcy.P. 56 motion

because the issue involves solely a matter of law. We address only the issue requested.

Title 11 U.S.C. § 1326(a)(2) provides that payments received by a trustee shall be retained until confirmation or denial of confirmation of a plan. "If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor [after deducting § 503(b) claims · and administrative expenses]."

As we indicated earlier, Courts are split about how to dispose post-petition, pre-conversion earnings paid to the trustee, but not yet distributed to creditors. As Judge Ellington noted in *O'Quinn, supra,* 143 B.R. at 409–410, the decisions can be grouped under four theories:

1) The funds are property of the debtor and should be returned,

2) The funds are property of the Chapter 13 estate and should be disbursed according to the terms of the previously confirmed plan,

3) The funds become property of the Chapter 7 estate subject to exemptions that the debtor may claim, and

4) The funds become property of the Chapter 7 estate and the debtor may not claim any exemptions against the funds.

A number of Courts have returned debtor payments by excluding them from the new Chapter 7 estate.[10] This view makes statutory and common sense. Under 11 U.S.C. § 348(a), conversion of a case under the Bankruptcy Code does not affect the date of petition filing, case commencement, or orders for relief. By the plain meaning of § 348, the date of filing of the petition is not altered; therefore, the property of the estate should be determined according to § 541 at the time the original Chapter 13 petition was filed. See, *In re Marshall, supra,* at 149. Revestment of property of the estate does not occur on conversion because the only revestment Code provision, 11 U.S.C. § 349(b)(3), applies to dismissals. *In re Walker,* 84 B.R. 888 (Bkrtcy.D.D.C.1988).

After ruling that the payments do not fall into the Chapter 7 estate, other Courts have also held that the payments should not be disbursed according to the previously confirmed plan. See, *In re Boggs, supra* at n. 10. There is no explicit legislative intent to support vesting creditors with payments held by the trustee. In fact, plan confirmation vests post-petition acquired property in the debtor.[11] *In re de Vos, supra,* at 159; *In re Peters, supra,* at 71. Indeed, a trustee cannot act after conversion because 11 U.S.C. § 348(e) dictates that conversion "terminates the service of any trustee ... serving in the case before such conversion." *In re Luna, supra,* at 1002. Courts inferred that this termination of a trustee's service implicitly bars any payments by the trustee to creditors after conversion. The trustee does not merely disappear, however. A Chapter 13 trustee has a duty to render a final account under F.R.Bkrtcy.P. 1019(6). In addition, the termination of a trustee's service serves only as a starting point: given that a trustee has no title to the payments, do the creditors or a debtor hold better title? *In re Redick,* 81 B.R. 881, 886–87 (Bkrtcy.E.D.Mich.1987).

The major public policy rationale behind returning the wages to a debtor is encouraging the filing of voluntary Chapter 13 petitions. By returning the wages, debtors would not need to pause and consider the merits of an immediate Chapter 7 filing before seeking Chapter 13 relief. See, *In re Peters, supra.* To decide otherwise would discourage Chapter 13 cases, and place converted Chapter 13 debtors in a worse position then if they originally filed under Chapter 7; a violation of the "fresh start" mandate of the Bankruptcy Code. All of the foregoing can only lead to one conclusion—

---

**10.** See, *In re Boggs,* 137 B.R. 408 (Bkrtcy. W.D.Wash.1992); *Blood v. Wineburg (In re Marshall),* 79 B.R. 147 (Bkrtcy.N.D.N.Y.1987); *In re de Vos,* 76 B.R. 157 (N.D.Cal.1987); *McCullough v. Luna (In re Luna),* 73 B.R. 999 (N.D.Ill.1987); *In re Peters,* 44 B.R. 68 (Bkrtcy.M.D.Tenn.1984); *In re Hannan,* 24 B.R. 691 (Bkrtcy.E.D.N.Y. 1982).

**11.** We do not rule today on post-confirmation payments in a converted case because the issue is not before us. We use the post-confirmation vesting of property only to bolster our ruling today.

return the Chapter 13 payments to the debtor.

## CONCLUSION

The clear statutory directive of later enacted § 1326(a)(2) does not conflict with § 348(a), nor may it be overruled by a mere bankruptcy rule, namely F.R.Bkrtcy.P. 1019(a). Contrary to Judge Posner's rule in *Lybrook, supra,* 951 F.2d at 136, that "once in, always in," Congress can mandate a rule that "what Congress taketh away, Congress can giveth back." We conclude that funds received preconfirmation, but undistributed, belong to the debtor after the case is converted to a Chapter 7.

Counsel for Debtor to settle an Order in accordance with this Memorandum of Decision.