In re Thomas B. VERDUNN, Debtor.

Bankruptcy No. 92–460–8B7.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 24, 1997.

B. Gray Gibbs, St. Petersburg, FL, for debtor.

Traci K. Strickland, St. Petersburg, FL, Chapter 7 Trustee.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

Philip Doyle, Susan Roark Waldron, Trial Attorneys, Washington, DC, for U.S.

### ORDER ON MOTION TO REQUIRE CHAPTER 7 TRUSTEE TO TURN-OVER MONIES RECEIVED FROM CHAPTER 13 TRUSTEE

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon the Debtor, Thomas B. Verdunn's Motion to Require Chapter 7 Trustee to Turn-

over Monies Received From Chapter 13 Trustee filed in the above-captioned case. Several other issues are occasioned by the United States Court of Appeal for the Eleventh Circuit's ruling on Verdunn's ineligibility under 11 U.S.C. § 109(e) to be a Chapter 13 debtor.[1] In accordance with that appellate mandate, this Court dismissed the case, whereupon the Debtor elected to convert the case to one under Chapter 7 pursuant to § 1307.

Prior to conversion and consistent with the confirmed Chapter 13 Plan, the Internal Revenue Service received payments under the plan as distributions toward the IRS' allowed priority and unsecured claims.[2] The essence of this case is twofold: first, whether § 109(e), which governs Chapter 13 eligibility, confers subject matter jurisdiction on this Court notwithstanding the subsequent ineligibility of the Debtor; and second, whether the Debtor is entitled to return of the monies paid under a confirmed plan when, subsequent to confirmation, the Debtor is determined to be ineligible as a Chapter 13 debtor. After reviewing the record and weighing the evidence presented, this Court finds:

## PROCEDURAL HISTORY

The Debtor filed his Chapter 13 Petition on January 14, 1992. The Debtor's primary claimant, the IRS, timely filed a Proof of Claim for underpayment of taxes, civil fraud penalties and interest pertaining to the years 1982 through 1986.[3] The IRS also filed a Motion to Dismiss on the basis that it's claim alone exceeded the maximum amount of unsecured debts allowed for Chapter 13 debtors pursuant to § 109(e). The Motion was denied without prejudice by order dated November 9, 1992, and on January 8, 1993, the IRS renewed its Motion to Dismiss, asserting the Court lacked jurisdiction to grant the Chapter 13 relief sought by the Debtor due to the amount of unsecured debt reflected in the record. Once again, this Court denied the IRS' request.[4]

The Debtor's Plan was confirmed on November 11, 1994, over the IRS' objection.[5] In the Order Confirming Plan, this Court found the Debtor eligible for Chapter 13 relief in accordance with 11 U.S.C. § 109(e) because the Debtor's tax liabilities were not readily determinable from the record and were thus unliquidated.[6] In the meantime, the IRS had appealed the order granting summary judgment on the IRS' 1992 tax claim and, on March 16, 1995, the District Court affirmed, finding the IRS' tax claim was unliquidated for purposes of Chapter 13 eligibility since, as of the petition date, the tax court had not determined the amount of the Debtor's outstanding tax liabilities.[7] The IRS appealed the District Court's affirmance to the Eleventh Circuit Court of Appeal. During the pendency of that appeal, the

1. *United States v. Verdunn*, 89 F.3d 799 (11th Cir.1996)(reversing the District Court's affirmance of confirmation of the plan.) The ancillary issues which have arisen are (1) whether the Debtor's Chapter 13 ineligibility divests this Court of subject matter jurisdiction; and (2) if not, the effect of conversion on disbursements made to the Internal Revenue Service pursuant to the confirmed Chapter 13 Plan. The latter is the subject of a pending adversary action in the Chapter 7 case, Adv. No. 96–969, filed by the Debtor against the Chapter 13 Trustee and the IRS for turnover of plan payments distributed to the IRS.

2. By virtue of this Court's Order Allowing and Disallowing Claims and Ordering Disbursements entered March 16, 1995, the IRS has a priority claim against the Debtor in the amount of $48,117.64, together with an allowed unsecured claim of $159,703.93.

3. This Court granted summary judgment in favor of the Debtor, and found the tax fraud claims of the IRS for the Debtor's 1992 taxes were not entitled to priority status, but rather were classified as general, unsecured liabilities. *In re Verdunn*, 160 B.R. 682 (Bankr.M.D.Fla.1993).

4. Order on Motion by United States to Dismiss This Bankruptcy Petition entered July 12, 1993.

5. Order Confirming Plan, entered November 10, 1994.

6. Prepetition, Verdunn had filed a petition with the United States Tax Court seeking a determination of his correct tax liability and the correct amount of any penalties and interest owed. As of the petition date, the Tax Court had not received evidence nor made a determination of the correct tax liability.

7. *United States v. Verdunn*, 187 B.R. 996 (M.D.Fla.1995).

Chapter 13 Trustee disbursed plan payments, including some $60,763.14 to the IRS.

By order dated July 31, 1996, the Eleventh Circuit found the Debtor was ineligible for Chapter 13 relief and remanded the case with instructions that it be dismissed.[8] The Circuit Court concluded the Debtor's federal income tax liabilities and penalties were liquidated unsecured debts for the purposes of Chapter 13 eligibility since they were asserted by the Commissioner of the Internal Revenue Service in a statutory Notice of Deficiency and were the subject of ongoing Tax Court litigation at the time of the bankruptcy filing.[9] This Court set the matter for status conference and thereafter, on February 6, 1997, entered an Order Upon Order to Show Cause, Dismissing Confirmed Chapter 13 Case and Retaining Jurisdiction over Pending Adversary in which it permitted the Debtor to convert the case. The Debtor timely converted the case to one under Chapter 7 and the parties were invited to submit memoranda regarding the subject matter jurisdiction of this Court as regards the effect of the confirmed plan.

## SUBJECT MATTER JURISDICTION OF THE BANKRUPTCY COURT

■ The Debtor urges the Court to conclude that congressional intent and language of the statute do not indicate any intention that § 109(e) circumscribe a bankruptcy court's jurisdiction, but rather delineate a debtor's eligibility to Chapter 13 relief. In that vein, the Debtor advances the argument that once a debtor seeks relief pursuant to Title 11, all provisions under Title 11 are invoked and the court has jurisdiction to administer the case accordingly. Further,

the Debtor maintains the funds disbursed to the IRS are property of the estate pursuant to 11 U.S.C. §§ 348, 1306(a)(2) and 1327(b) and, since the complaint for turnover of those funds is a core matter, this Court properly retained jurisdiction over the Debtor's adversary proceeding for turnover even if the Court was required to dismiss the bankruptcy case outright.

In its memorandum, the IRS did not address the issue of whether the eligibility requirements of § 109(e) are jurisdictional, stating only that the provisions of § 349, particularly subsection (b)(3), which serve to revest property of the estate in the entity in which such property was vested immediately prepetition, are operative and since the funds paid the IRS are no longer property of the estate, they cannot be revested in the Debtor upon dismissal.[10] Instead, the IRS argues the Debtor may seek to recover payments made to it pursuant to the confirmed Plan only by filing an administrative claim for refund and, if unsuccessful, must seek relief from the district court. Moreover, the IRS maintains the Debtor is precluded from asserting he is entitled to a refund because the Tax Court determined he had filed fraudulent returns. The IRS also suggests the plain equities of this case favor allowing it to keep the taxes since to do otherwise would allow a debtor who has filed fraudulent tax returns to obtain a refund of partial payments of the resulting liabilities.

There is a split of authority over whether eligibility under § 109(e) is jurisdictional and, to date, the issue has not been decided by the Eleventh Circuit Court of Appeal.[11] However, the majority of courts addressing the

8. *Verdunn, supra,* note 1.

9. It is noteworthy that only during the pendency of the appeal, and following this Court's Order on Motion of the United States to Lift Automatic Stay to Allow Tax Court Proceeding to Continue, did the United States Tax Court determine the Debtor had filed fraudulent income tax returns for the years 1982, 1983, 1984 and 1985, and assess liabilities and sustain the determinations made by the IRS in its Notice of Deficiency.

10. This argument is misplaced, given the conversion. Had the Debtor not opted to convert his case, any issue occasioned by the dismissal of the

Chapter 13 case, as it related to § 109(e) issues, would be governed by § 349. *See, e.g., In re Hammers,* 988 F.2d 32 (5th Cir.1993); *Miller v. U.S.,* 907 F.2d 80 (8th Cir.1990); *Cavaliere v. Sapir,* 208 B.R. 784 (D.Conn.1997); *In re Mazzeo,* 204 B.R. 355 (E.D.N.Y.1996).

11. Although mandating this case be dismissed, the Eleventh Circuit did not consider the effect of a debtor's right to convert a Chapter 13 case to a Chapter 7 case at any time pursuant to § 1307(a) or whether the mandate of dismissal for failure to meet the § 109(e) eligibility requirements divested this Court of subject matter jurisdiction.

issue have found the eligibility requirements of § 109(e) are not jurisdictional.[12] The basis for such a conclusion has been plainly articulated by one bankruptcy court opinion which relied on the circuit's majority view:

> Jurisdiction is an issue of the Court's power to grant relief under title 11. Section 109(e) eligibility raises the issue of whether debtors should be accorded relief under a specific chapter of the Bankruptcy Code—with the implicit assumption that the Court has the jurisdiction to do so.... The statutory grant of jurisdiction over bankruptcy cases, 28 U.S.C. § 1334, is phrased in terms of jurisdiction, ... is directed to the courts and is located in that part of the United States Code dealing with jurisdiction.... Section 109(e), on the other hand, establishes criteria to determine whether a debtor should be accorded chapter 13 relief, is directed towards the debtor, and is located in the Bankruptcy Code.

*In re Jones*, 129 B.R. 1003, 1007 (Bankr. N.D.Ill.) *aff'd* 134 B.R. 274 (N.D.Ill.1991). A minority of courts have determined otherwise.[13] A number of the cases construing the jurisdictional issue were decided within the context of a failure to timely challenge eligibility prior to confirmation, resulting in waiver of eligibility.[14]

In addition to the Fifth,[15] Eighth,[16] and Ninth Circuits,[17] several bankruptcy courts located within the Eleventh Circuit's ambit have rejected the argument that failure to meet § 109(e) eligibility requirements is jurisdictional. For instance, the Bankruptcy Court for the Northern District of Alabama, considering the question of whether a debtor was "jurisdictionally eligible to be a Chapter 13 debtor," specifically adopted the majority

view that "section 109 was not written to restrict the jurisdiction of statutes governing the authority of federal courts to hear bankruptcy cases." *In re Griggs*, 181 B.R. 111, 113, n.6 (Bankr.N.D.Ala.1994)(citing *Rudd supra*, note 12 at 1042). Similarly, the Bankruptcy Court for the Northern District of Georgia adopted the majority view and found eligibility to be "merely a limitation ... [which] may be waived" and to which res judicata may apply when a creditor failed to timely object to the debtor's failure to meet the § 109 eligibility requirements. *Lochamy, supra,* note 12 at 385. That conclusion is consistent with the purpose and intent of § 1307(a) to permit a debtor to exercise the right to convert from a Chapter 13 case to a Chapter 7 case at any time, including when the § 109(e) eligibility requirements are not met. *See, e.g., In re Magras*, 129 B.R. 429 (Bankr.D.V.I.1991); *In re Bobroff*, 32 B.R. 933 (Bankr.E.D.Pa.1983). This Court is persuaded by and adopts the majority view and concludes it did not lack subject matter jurisdiction over the Chapter 13 case and properly permitted the Debtor to exercise his right to convert the case to one under Chapter 7.

## EFFECT OF CONVERSION OF CASE ON PAYMENTS TO CREDITORS MADE PURSUANT TO A CONFIRMED CHAPTER 13 PLAN

Having concluded that subject matter jurisdiction was properly vested in this Court, the next consideration is the Debtor's contention that his ineligibility somehow entitles him to recover the payments made to the IRS under the terms of his confirmed Chapter 13 plan. The Debtor's arguments presuppose the Court's rulings during the pen-

---

12. *See, e.g., Rudd v. Laughlin*, 866 F.2d 1040 (8th Cir.1989); *Promenade National Bank v. Phillips*, 844 F.2d 230 (5th Cir.1988); *In re Wenberg*, 94 B.R. 631 (9th Cir.BAP 1988), *aff'd* 902 F.2d 768 (9th Cir.1990); *In re Nikoloutsos*, 199 B.R. 624 (Bankr.E.D.Tex.1996); *In re Lochamy*, 197 B.R. 384 (Bankr.N.D.Ga.1995).

13. *See, e.g., Comprehensive Accounting Corporation v. Pearson*, 773 F.2d 751 (6th Cir.1985); *Ekeke v. United States*, 133 B.R. 450 (S.D.Ill. 1991); *In re Koehler*, 62 B.R. 70 (Bankr.D.Neb. 1986); *In re Keziah*, 46 B.R. 551 (Bankr. W.D.N.C.1985).

14. It is axiomatic that if a debtor's eligibility under § 109 is waivable, the issue of subject matter jurisdiction under that section can never arise as a matter of law since subject matter jurisdiction itself is unwaivable. *Lochamy, supra,* note 12 at 385.

15. *Phillips, supra,* note 12.

16. *Rudd, supra,* note 12.

17. *In re Wenberg*, 902 F.2d 768 (9th Cir.1990).

dency of the Chapter 13 case, particularly confirmation of the plan and payments made thereunder, are somehow void *ab initio* as a result of the Debtor's ineligibility. Such a result could only be a consequence of lack of jurisdiction which is clearly not the situation here.

When a case is converted from one under Chapter 13 to one under Chapter 7, the debtor is deemed to have filed a Chapter 7 petition as of the date the Chapter 13 case was filed. 11 U.S.C. § 348(a).[18] Upon conversion, the Chapter 13 Trustee is obliged to turnover property of the estate to the Chapter 7 Trustee. F.R.B.P. 1019(4). Understandably, identification of "property of the estate" under §§ 1306(a)(2), 541(a), and 348(f), upon conversion, has been the subject of much debate, especially as it pertains to monies received by the Chapter 13 Trustee but not disbursed to creditors under the confirmed Plan before conversion.[19] Preconfirmation payments received by the Chapter 13 Trustee are of no consequence to the instant situation.[20]

■ Upon confirmation, a plan becomes binding on the debtor and all creditors treated therein. § 1327(a). This is so even upon conversion.[21] Section 348 is not intended to be "a source of disruption but, instead, preserves the continuity of the bankruptcy proceedings." *Mann, supra,* note 20 at 520 (quoting *In re Lybrook,* 107 B.R. 611, 613 (Bankr.N.D.Ind.1989)). Likewise, the committee notes to Rule 1019 governing conversion emphasize the Rule "is not intended to invalidate any action taken in the superseded case before its conversion to chapter 7." Such intent is consistent with caselaw finding all preconversion plan payments made to the Trustee vest in creditors provided for by the confirmed plan, even if undistributed at conversion, given the Trustee's obligations under § 1326(a)(2) to disburse the funds.[22]

Understandably, courts have extended this philosophy to preserve the integrity of plan distributions made to creditors prior to conversion of the case.[23] To do otherwise would fly in the face of all logic and equity, since if the creditors have a vested right in payments made to the Chapter 13 Trustee for disbursement under the plan, payments actually received by creditors pursuant to the plan could have no lesser status.[24] *Accord, Hardin, supra* at 313; *O'Quinn, supra,* note 19 at 412 (citing *In re Giambitti,* 27 B.R. 492

**18.** Consistent with that principle, conversion does not affect the trustee's avoiding powers, since the 90–day preference period and the one-year fraudulent transfer period are both determined as of the date the original petition was filed. *E.g., Vogel v. Russell Transfer, Inc.,* 852 F.2d 797 (4th Cir.1988); *In re Meltzer,* 90 B.R. 21 (D.Conn.1988). Nor does conversion adversely impact the effect of the automatic stay imposed by the filing of the original Chapter 13 petition. *British Aviation Insurance Co. v. Menut,* 873 F.2d 264 (11th Cir.1989); *In re Gilpin,* 209 B.R. 490 (Bankr.W.D.Mo.1997).

**19.** *E.g., In re Hardin,* 200 B.R. 312 (Bankr. E.D.Ky.1996); *O'Quinn v. Brewer,* 143 B.R. 408 (Bankr.S.D.Miss.1992); *In re Redick,* 81 B.R. 881 (Bankr.E.D.Mich.1987); *In re Milledge,* 94 B.R. 218 (Bankr.M.D.Ga.1988); *In re Burns,* 90 B.R. 301 (Bankr.S.D.Ohio 1988).

**20.** *See. e.g. In re Griseuk,* 165 B.R. 956 (Bankr. M.D.Fla.1994); *In re Mann,* 160 B.R. 517 (Bankr.D.Vt.1993); *In re Daniels,* 79 B.R. 88 (Bankr.S.D.Fla.1987); *In re Lennon,* 65 B.R. 130 (Bankr.N.D.Ga.1986).

**21.** *See, e.g., Lennon, supra* at 136 (plan governs the relations of the parties and the debtor is bound to make the specified payments provided in the confirmed plan); *but compare In re Shaf-*fer, 48 B.R. 952 (Bankr.N.D.Ohio 1985)(plan does not operate as final determination of rights of debtors and creditors).

**22.** *E.g. Smith v. Strickland,* 178 B.R. 524 (M.D.Fla.1995); *Hardin, supra,* note 16 at 313 (Upon conversion, creditors treated in the plan are deemed to have a vested right in monies received by the Trustee.); *O'Quinn, supra,* note 19; *In re Boggs,* 137 B.R. 408 (Bankr.W.D.Wash. 1992); *In re Halpenny,* 125 B.R. 814 (Bankr. D.Haw.1991).

**23.** *E.g., In re Luna,* 73 B.R. 999 (N.D.Ill.1987)(creditors' rights to payment vested at time of distribution by Trustee); *See also* dicta in *O'Quinn, supra,* note 19 at 412 (quoting *In re Plata,* 958 F.2d 918 (9th Cir.1992); *Lennon, supra,* note 20 at 136 (discussing in dicta that debtor is to have no continuing interest in payments made pursuant to a confirmed plan.))

**24.** As reiterated by Judge Conrad in *Mann,* "a rule of once in, always in is necessary to discourage strategic, opportunistic behavior that hurts creditors without advancing any legitimate interest of debtors." 160 B.R. at 522 (quoting Judge Posner in *In re Lybrook,* 951 F.2d 136 (7th Cir. 1991)).

(Bankr.D.Or.1983)); *In re Waugh,* 82 B.R. 394, 400 (Bankr.W.D.Pa.1988). Under this analysis, the Debtor's contentions are meritless; the payments made to the IRS pursuant to the terms of the confirmed plan became vested when received by the Chapter 13 Trustee. The subsequent disbursement to the IRS has certainly not weakened that status. For the same reason, the Debtor would not be entitled to turnover of any funds paid to the Chapter 13 Trustee and turned over to the Chapter 7 Trustee following conversion; however that issue is academic since here the Chapter 13 Trustee remitted no funds to the Chapter 7 Trustee.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Debtor's Motion to Require Chapter 7 Trustee to Turnover Monies Received from Chapter 13 Trustee be, and the same is hereby denied. A separate order dismissing the pending adversary proceeding styled *Thomas B. Verdunn v. Terry E. Smith and United States of America,* No. 96–969, shall be entered in accordance with the foregoing.