In re Scott M. CARELS and Joann M. Carels, Debtors

Christine Shubert, Chapter 7 Trustee for the Estate of Scott M. Carels and Joann M. Carels, Plaintiff

v.

Scott M. Carels, Joann M. Carels, and William C. Miller, Esquire, former Chapter 13 Trustee for the Estate of Scott M. Carels and Joann M. Carels, Defendants.

Bankruptcy No. 07–17291bf.
Adversary No. 09–0134.

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 20, 2009.

**154**

Paul Brinton Maschmeyer, Robert W. Seitzer Philadelphia, PA, for Plaintiff.

Robert F. Salvin, Community Impact Legal Services, Chester, PA, for Defendants.

## MEMORANDUM

BRUCE FOX, Bankruptcy Judge.

The plaintiff, chapter 7 trustee Christine C. Shubert, Esq., commenced this adversary proceeding seeking a declaration that property of the estate, transferred to her possession by the former chapter 13 trustee, can be distributed to unsecured creditors under 11 U.S.C. § 726. William C. Miller, Esq., the former chapter 13 trustee, has agreed that he holds no interest in these funds. "Consent Order" (docketed July 21, 2009). The chapter 7 debtors, Scott and Joann Carels, object to the relief sought by the plaintiff and contend, via counterclaim, that the funds currently held by the chapter 7 trustee are exempt under section 522(d)(1), except for $5,503.89.

The chapter 7 trustee has moved for summary judgment.

The following material facts are not in dispute, many of which were stipulated to in a prior contested matter between the chapter 7 trustee and the debtors. *See* Motion for Summary Judgment, "Schedule 1"; Debtors' Affidavit, ¶ 1. The undisputed material facts are also derived from the debtors' bankruptcy schedules, affidavit, and documents filed of record with this court, including proofs of claim.

### I.

On December 12, 2007, the debtors filed a voluntary petition in bankruptcy under chapter 13. William C. Miller, Esq., who has been appointed a standing chapter 13 trustee in this district, was assigned as trustee in their case. *See* 11 U.S.C. § 1302(a).

At the time of their bankruptcy filing, the debtors owned the real property located at 2830 Tyler Road, Bensalem, Pennsylvania, which property they were trying to sell. Their ownership interest in that realty was fully disclosed on their bankruptcy

schedules and valued by them at $234,900. *See* Bankruptcy Schedule A. Moreover, the debtors claimed a federal homestead exemption under 11 U.S.C. § 522(d)(1) in the amount of $40,400. *See* Bankruptcy Schedule C.

On March 5, 2008, the chapter 13 trustee held and completed a section 341 meeting. At no time thereafter did the chapter 13 trustee object to the debtors' homestead exemption claim.

When the debtors filed their chapter 13 petition, both were unemployed. Their bankruptcy schedule of income revealed no monthly income. *See* Bankruptcy Schedule I. Their schedule of expenses disclosed no disposable income with which to fund a chapter 13 plan of reorganization. *See* Bankruptcy Schedule J. The debtors' purpose in their chapter 13 filing was to sell their home and avoid foreclosure. They hoped to sell the realty, repay creditors, and receive as much of their home equity (in the form of proceeds) as possible, while also obtaining a bankruptcy discharge.

Although the debtors were eligible to seek chapter 7 relief, they opted instead to file a chapter 13 petition because of their fear that a chapter 7 trustee would conclude that there was insufficient non-exempt equity in the realty to warrant marketing and selling their real property. As only the chapter 7 trustee has authority to sell estate property, *see* 11 U.S.C. §§ 363(b), 704(1), the debtors anticipated that a chapter 7 trustee would not exercise that authority. Therefore, the debtors were concerned that a chapter 7 filing would result in their mortgagee obtaining relief from the bankruptcy stay and proceeding to foreclosure. Upon a sale in foreclosure, the debtors thought it likely that all equity in their home would be lost. Thus, they filed a chapter 13 petition in order to invoke the bankruptcy stay, retain possession of estate property, *see* 11

U.S.C. § 1306(b), and have the right to sell their realty.

On April 11, 2008, about four months after their bankruptcy filing, the debtors found a buyer and signed an agreement of sale for the Bensalem realty in the amount of $216,000. *See* Debtors' Motion to Sell, Ex. A. On May 29, 2008 the debtors filed a motion seeking authority to sell under 11 U.S.C. §§ 363, 1303.

A hearing was held on that sale motion. After discussions between counsel for the chapter 13 trustee and counsel for the debtors, on June 24, 2008 an agreed order was entered authorizing the debtors to sell their realty. This sale order contained certain provisions proposed by the chapter 13 trustee and by the debtors.

The June 24th order provided that the debtors' real property could be sold for $216,000, authorized distribution at closing to repay the outstanding mortgage balance in full, authorized the payment of a real estate commission, and also authorized the payment of the debtors' two outstanding car loan balances totaling $11,749.86. *See* Motion for Summary Judgment, Ex. C. The sale order also directed the title clerk to pay the remaining proceeds to the chapter 13 trustee "as a special receipt, to be available under the debtor's [sic] plan for distribution to unsecured creditors." *Id.,* at 2. This order also stated:

> Debtor [sic] shall not be permitted to voluntarily dismiss the case; he [sic] may, however, convert this case to one under Chapter 7. In the event the case is converted to Chapter 7, any funds remaining in the possession of the standing trustee shall be transferred to the appointed Chapter 7 trustee. . . .

*Id.,* at 2.

The Bensalem realty was then sold on July 25, 2008, with the debtors' mortgage and secured car loans paid in full from the

proceeds. After payment of various closing costs and commissions, $34,154.03 was transferred to the chapter 13 trustee in accordance with the sale order. *See* Motion for Summary Judgment, ex. G.[1]

On September 25, 2009, the debtors' proposed third amended chapter 13 plan was confirmed. Motion for Summary Judgment, ex. E. Under the terms of their confirmed plan, there were seven classes of claims. Classes I–III consisted solely of the three secured creditors (*viz.*, mortgagee and two auto lenders) whose claims had been repaid in full from the realty sale proceeds prior to confirmation. Motion for Summary Judgment, ex. D. Class IV consisted of the secured claim of Blue Stone Investments in the amount of $4,492.03. Class V consisted of the claims of secured creditors not included in classes I–IV, if any. Class VI consisted of the priority claim of the Internal Revenue Service in the amount of $2,555.17. Finally, class VII consisted of the claims of general unsecured creditors. *Id.*, at 2.

After classifying the various claims, the confirmed plan provided that the

Funds paid to the trustee shall be held for 30[sic][2] following confirmation of the debtors' plan or until all filed objections to claims are resolved, *whichever is earlier.* The Trustee should then distribute funds, less the trustee's commission, as follows:

(a). To the allowed secured claim, if any, of the Class VI claimant until paid in full;

(b). To the allowed claim, if any, of the Class IV claimant until paid in full;

(c). To the allowed claim, if any, of the Class V claimant until paid in full;

(d). To the allowed claims, if any, of the Class VII claimants until paid in full; and

(f). To the debtors following payment in full to all creditors.

Motion for Summary Judgment, ex. D, at 3 ¶ 6 (emphasis added).

At the time of confirmation, there were no objections to claims pending. There were also no secured proofs of claim filed by creditors, other than those placed in classes I–IV. The IRS and Bluestone proofs of claim filed with this court were consistent with the provisions of the confirmed plan and totaled $7,247.20. In addition, there were $15,553.61 in general unsecured claims filed of record. *See* Claims Register. Therefore, the creditor claims provided for by the confirmed plan not paid pre-confirmation from the realty sale proceeds equaled $22,800.81. The trustee had sufficient funds on hand to pay all claims in full at the time of confirmation, plus yield a surplus to the debtors.

The debtors' confirmed plan also provided as follows:

To facilitate the payment of creditors under this plan in a lump sum, as opposed to installment payments over an extended period, the debtors are waiving their exemptions for purposes of this plan. This waiver will not apply in the event the case is ever converted to Chapter 7.

Plaintiff's Motion, ex. D, ¶ 10.

The September 25th confirmation order stated, *inter alia:*

---

1. A total of $11,749.86 was paid to the two motor vehicle lenders from the realty sale proceeds. With $34,154.03 paid to the chapter 13 trustee, that means $45,903.89 remained from those proceeds after payment of

closing costs, commissions, and the mortgage lien.

2. Apparently, the debtors inadvertently omitted the word "days" after the number 30.

That all property of the estate, including any income, earnings other property which may become a part of the estate during the administration of the case which property is not proposed, or reasonably contemplated, to be distributable to claimants under the plan shall revest in the debtor(s); provided, however, that no property received by the trustee for the purpose of distribution under the plan shall revest in the debtor except to the extent that such property may be in excess of the amount needed to pay in full all allowed claims as provided in the plan.

On October 1, 2008, just five days after confirmation, the debtors filed an application for conversion under 11 U.S.C. § 1307(a), thereby converting their case from chapter 13 to chapter 7. Upon conversion, the chapter 13 trustee retained about $3,100 as a commission under 11 U.S.C. § 1326(b)(2) and transferred the balance, roughly $31,000, to the chapter 7 trustee Ms. Shubert, appointed under section 701(a). The chapter 7 trustee currently has possession of those transferred funds and seeks to distribute them to general unsecured and priority creditors.

On November 17, 2008, counsel for the debtors communicated with the chapter 7 trustee and asserted that all but $5,001.91 of the funds held by her were exempt under section 522(d)(1).[3] Motion for Summary Judgment, ex. H. The trustee responded by filing an objection to the debtor's exemption claim, which was overruled on March 19, 2009 without prejudice to the trustee's right to file the instant adversary proceeding.

## II.

### A.

In her complaint, the chapter 7 trustee seeks a declaration that the debtors waived any exemption rights they may have had to the $31,000 in her possession, and that she may distribute those funds in accordance with 11 U.S.C. § 726. The debtors assert that they preserved their exemption rights by the terms of their confirmed plan when their case was converted to chapter 7. Via counterclaim, they seek turnover from the trustee of "only so much of the sale proceeds as they would be entitled to retain had the Chapter 7 trustee sold their property." Answer and Counterclaim, ¶ 40. The parties' request for declaratory relief is ripe based upon "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Pic–A–State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir.1996); *see, e.g., NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 (3d Cir.2001); *see also In re Cahill*, 2008 WL 5441229 (Bankr.N.D.Ohio 2008) (granting declaratory judgment as to the scope of estate property).

The trustee now seeks summary judgment. Federal Rule of Bankruptcy Procedure 7056 incorporates Fed.R.Civ.P. 56, the summary judgment rule, into bankruptcy adversary proceedings. The purpose of summary judgment is to avoid the expense and delay of an unnecessary trial when no material facts are in dispute and one or more of the parties is entitled to prevail on the merits. *See, e.g., Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573

---

**3.** The debtors's counsel calculated this figure by adding the sale proceeds paid to the trustee to the amounts paid to the two secured car lenders and then subtracted the debtors' $40,400 homestead exemption. Motion for Summary Judgment, ex. H. In his computation, counsel committed a mathematical error, as $34,154.03 + $8,266.42 + $3,483.44 = $45,903.89 and not $46,391.91. Subtracting $40,400 from the correct amount yields $5,503.89 and not $5,001.91.

(3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). The standard for determining the applicability of summary judgment under Rule 56 is well established. As the Third Circuit Court of Appeals observed:

> Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of material fact. . . . In order to defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). In essence, the non-moving party must demonstrate a dispute over facts that might affect the outcome of the suit. *Id.* Moreover, in reviewing the record, we must give the non-moving party the benefit of all reasonable inferences. . . .

*Hampton v. Borough of Tinton Falls Police Dep't,* 98 F.3d 107, 112 (3d Cir.1996).

Here, the debtors agree with the trustee that there are no material facts in dispute. Instead, they challenge the trustee's assertion that she is entitled to the declaratory judgment she seeks as a matter of law.

### B.

As noted above, the debtors in this bankruptcy case claimed a homestead exemption in the amount of $40,400 under section 522(d)(1). No timely objection was filed and so this exemption was allowed. *See Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The plaintiff/trustee contends, however, that the debtors subsequently and expressly waived their exemption claim by: (1) agreeing to the June 2008 sale order that stated that the net sale proceeds would be paid to the chapter 13 trustee "as a special receipt, to be available under the debtor's plan for distribution to unsecured creditors"; (2) consenting to the transfer of approximately $34,000 to the chapter 13 trustee at the sale closing; (3) proposing a plan that provided for full payment for unsecured creditors; (4) stating in their plan that they are "waiving their exemptions for purpose of this plan"; and (5) obtaining confirmation of their proposed plan. *Compare In re Brown,* 234 B.R. 907, 914 (Bankr.W.D.Mo.1999) (exemption waiver in proposed chapter 11 plan was not effective because the plan was not confirmed).

Alternatively, the trustee contends that principles of equity and estoppel should preclude the debtors from now asserting their homestead exemption claim. *See generally Matter of Yonikus,* 996 F.2d 866, 872 (7th Cir.1993) (an amendment of an exemption claim "may be denied upon a showing of bad faith or prejudice to creditors or third parties."); *In re Doan,* 672 F.2d 831, 833 (11th Cir.1982) (same). Having obtained the benefits of a chapter 13 sale upon a promise to repay their creditors, the debtors should not, the trustee asserts, be able to renege upon their promise.

The debtors respond that they are entitled to their previously claimed homestead exemption because their confirmed plan expressly provided that their waiver of exemptions would not apply in the event their case was converted to chapter 7. As conversion did occur, and as their chapter 13 plan was approved, they contend that all parties are bound by this waiver rescission under 11 U.S.C. § 1327(a). *See generally In re Szostek,* 886 F.2d 1405 (3d Cir.1989). They further maintain such a result is equitable, as creditors would then receive a distribution consistent with the sale of the realty under chapter 7. To deny

them their exemption claim would, in the debtors view, result in a windfall to creditors. *See* Debtors' Memorandum, at 8–9. The debtors also raise a third contention—that any rights of creditors under section 1326(a)(2) were lost when the chapter 13 trustee relinquished funds to the chapter 7 trustee—that will also be considered.

In resolving this summary judgment motion, I note certain aspects of this proceeding that are different from the typical dispute between a chapter 7 trustee and a debtor after conversion of a case from chapter 13 to chapter 7.

■ In order to retain control of their property, hire a real estate agent, and attempt to sell their realty, the debtors here filed a chapter 13 petition even though they had no monthly income. By virtue of section 109(e) of the Code, "only an individual with regular income ... may be a debtor under chapter 13[.]" Thus, these debtors, who disclosed that they had no regular income when their bankruptcy petition was filed, were not eligible for chapter 13 relief; yet no party in interest raised this issue, which can be waived. *See Rudd v. Laughlin,* 866 F.2d 1040, 1042 (8th Cir.1989) (eligibility for chapter 13 relief is not jurisdictional and can be waived); *Matter of Phillips,* 844 F.2d 230, 235–36 n. 2 (5th Cir.1988) (same).

In addition, the debtors here were proposing a chapter 13 plan that provided for no monthly payments to the chapter 13 trustee. The proceeds from the sale of their realty was their sole source of plan funding. Such a plan was objectionable:

Chapter 13 debtors may not fund a plan entirely from the sale of property.... Nor may debtors use the sale of property to avoid the eligibility requirements

of § 109(e). Therefore, debtors who have no disposable income with which to make payments under a Chapter 13 plan are not eligible for relief under Chapter 13 regardless of whether they can otherwise fund a plan through the sale of property.

*In re Lindsey,* 183 B.R. 624, 626–27 (Bankr.D.Idaho 1995) (citations omitted); *see also In re Gavia,* 24 B.R. 573 (9th Cir. BAP 1982):

The purpose underlying the enactment of Chapter 13 was to enable a debtor with regular income to develop and maintain a plan for repayment of his debts, rather than opt for liquidation. See, Report of the Committee on the Judiciary, H.R. 95–595, 95th Cong. 1st Sess.1978, p. 118, U.S.Code Cong. & Admin.News 1978, p. 5787. This legislative purpose is frustrated by a plan that proposes liquidation of a debtor's primary asset by a debtor whose regular income is not sufficient to make any payments from future income. In enacting the Code, Congress stated that Chapter 13 is not for everyone:

Some consumer debtors are unable to avail themselves of the relief provided under Chapter 13. For these debtors, straight bankruptcy is the only remedy that will enable them to get out from under the debilitating effects of too much debt.

H.R. 95–595....

The appropriate recourse for the debtors whose plan is nothing more than a liquidation is Chapter 7, not Chapter 13.

*Id.,* 24 B.R. at 575 (citation omitted).[4]

Nonetheless, the debtors confirmed a plan, without opposition, that called for the

---

**4.** Section 1123(b) lists permissible chapter 11 plan provisions; section 1222(b) lists permissible chapter 12 plan provisions; and section

1322(b) lists permissible chapter 13 plan provisions. Sections 1123(b)(4) and 1222(b)(8) both state that reorganization plans under

liquidation of their primary asset and distribution of the sale proceeds to their creditors, without further plan payments to the chapter 13 trustee.

To the extent that the chapter 13 trustee and creditors believed that this chapter 13 case would yield a 100% dividend on all allowed claims from the sale of the debtors' real property, one can understand why the debtors' lack of eligibility and the problematic nature of their proposed chapter 13 plan went unchallenged. These two aspects, however, render application of section 348(f)[5] to this dispute non-determinative. And disputes between chapter 7 trustees and debtors regarding the scope of bankruptcy estate property, as well as the disposition of property held by a chapter 13 trustee and transferred to a chapter 7 trustee upon conversion of the case, are usually decided by reference to section 348(f). *See generally In re Alexander*, 236 F.3d 431, 433 (8th Cir.2001); *In re Stamm*, 222 F.3d 216 (5th Cir.2000).

In general, sections 348(f)(1)(A) and (f)(2) address, *inter alia*, the disposition of postpetition income paid to the chapter 13 trustee that has not been distributed at the time of conversion of the case to chapter 7. Unless the conversion was in bad faith, those income payments are returned to the debtor upon conversion, as they would not have been property of the bankruptcy estate under chapter 7. *See, e.g., In re Stamm*, 222 F.3d at 218; *In re Young*,

66 F.3d 376 (1st Cir.1995); *In re Perez*, 345 B.R. 137, 140–41 (Bankr.D.Del.2006). If the conversion was in bad faith, such undistributed income payments are transferred by the chapter 13 trustee to the chapter 7 trustee for distribution to creditors. *See In re Siegfried*, 219 B.R. 581 (Bankr.D.Colo.1998); *see generally In re Messer*, 2000 WL 33673748 (Bankr. M.D.N.C.2000).

As the debtors observe in their memorandum, the chapter 13 trustee never had any postpetition income in his possession. He transferred to the chapter 7 trustee the proceeds of real property that would have been property of the estate had the case been commenced under chapter 7. 11 U.S.C. § 541(a)(6); *see, e.g., In re Waters*, 2008 WL 384571, at *8 (Bankr.D.Conn. 2008); *In re Buick*, 237 B.R. 607, 609 (Bankr.W.D.Pa.1999).

Had the debtors argued in the instant dispute that the funds transferred by the chapter 13 trustee were not property of the estate, because they were not "in the possession of or ... under the control of the debtor on the date of conversion," 11 U.S.C. § 348(f)(1)(A), the trustee likely would have countered that the conversion was in bad faith and argued that section 348(f)(2) should apply. The debtors, however, do not so contend, and therefore I need not address that issue. They maintain that the sale proceeds transferred to

---

chapters 11 and 12 may provide for the sale of some or all property of the bankruptcy estate, with the proceeds distributed to creditors. Section 1322(b) contains no similar provision.

5. Section 348(f) states in relevant part:
 (f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
 (A) property of the estate in the converted case shall consist of property of the

estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;

* * *

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

the chapter 7 trustee are estate property "in that they are the proceeds of the house the debtors owned on the date of the filing of their petition, and they remain in the debtors control by virtue of the debtors' exemption and the provisions of the plan." Debtors' Memorandum, at 11.

Accordingly, both parties agree that the chapter 7 trustee is now holding property of the bankruptcy estate. *See Fix v. First State Bank of Roscoe,* 559 F.3d 803, 809 (8th Cir.2009) ("[W]hen Fix's bankruptcy proceeding was converted from Chapter 13 to Chapter 7, any property that was part of the bankruptcy estate at the time of the original filing remains the property of the bankruptcy estate after the conversion. *See* 11 U.S.C. § 348(f)(1)(a)."). Furthermore, the bulk of those proceeds had been claimed as exempt under section 522(d)(1) at the outset of the chapter 13 case. The sole issue posed in this proceeding is whether orders entered while the case was in chapter 13, the debtors' conduct, confirmed plan provisions, and/or statutory provisions arising from confirmation supersede the debtors' homestead exemption.

## III.

The debtors acknowledge that they had "waived their [homestead] exemption for purposes of their chapter 13 plan[.]" Debtors' Memorandum, at 9. Although section 522(e) precludes prepetition waivers of exemptions in favor of unsecured creditors, section 1322(b)(8) permits a chapter 13 debtor to fund a proposed plan using property that would otherwise be exempt from the reach of creditors *(e.g.,* social security benefits):

> In Chapter 13, however, property, even though claimed as exempt, can in effect remain property of the estate if the debtor proposes to fund his plan in part through the use of exempt property.

Section 1322(b)(8) specifically allows the debtor to propose payment of "all or any part of a claim against the debtor from . . . property of the debtor." The debtor can, in effect, waive his exemptions and use exempt property in repaying creditors under a plan.

*In re Adams,* 12 B.R. 540, 542 (Bankr. Utah 1981) (footnote omitted); *see, e.g., In re Schnabel,* 153 B.R. 809, 813 (Bankr. N.D.Ill.1993).

The debtors emphasize, however, that their proposed plan expressly contained a provision that rescinded their waiver of exemption upon conversion of the case to chapter 7. Debtors' Memorandum, at 9. And section 1307(a) provides chapter 13 debtors with the right to convert to chapter 7 at any time, even after confirmation. *See In re Fisher,* 203 B.R. 958, 963 (N.D.Ill.1997). Furthermore, section 1327(a) renders the terms of a confirmed plan binding.

Implicit in the debtors' argument is the premise that the terms of their confirmed plan trump any conflicting terms of the pre-confirmation order that authorized the sale of the debtors' realty. *See generally In re Diviney,* 225 B.R. 762, 771 (10th Cir. BAP 1998) (terms of the binding plan supercede an earlier order that terminated the automatic stay). That is, if the order entered by agreement permitting the debtors to sell their realty effectively waived the debtors's homestead exemption, by providing that the sale proceeds paid to the chapter 13 trustee be used to repay the debtors' unsecured creditors, the debtors contend that the terms of the confirmed plan, with its rescission of any exemption waiver upon conversion, prevail. I shall assume that this premise is correct.

 Nevertheless, the terms of a confirmed bankruptcy plan are to be interpreted using the general principles of con-

tract interpretation. *See, e.g., In re Shenango Group* Inc., 501 F.3d 338, 344 (3d Cir.2007); *In re Stratford of Texas, Inc.,* 635 F.2d 365, 368 (5th Cir.1981); *In re Stuart,* 402 B.R. 111, 126 (Bankr.E.D.Pa. 2009). Where the terms of a confirmed plan are clear, they are enforced as written. *See In re Dow Corning Corp.,* 456 F.3d 668, 676 (6th Cir.2006) ("In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors.... State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written, regardless of whether it is in line with parties' prior obligations."); *cf. Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 590–91, 777 A.2d 418 (2001) ("The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties."). Ambiguities in a language of a contract (*i.e.,* confirmed plan) are construed against the drafter, here the debtor:

> If a debtor submits a generalized statement that it will pay secured creditors in full—100%, creditors are entitled to interpret that statement as guaranteeing the payment of each and every part of the creditor's claim. If the debtor wishes to be more specific and secure a confirmed plan that modifies the plain language of a 100% payment guarantee, it is the debtor's duty to put the creditor on notice by specifically detailing any exceptions. Failing this, the debtor as draftsman of the plan has to pay the price if there is any ambiguity about the

meaning of the terms of the plan. This comports with the long-standing rule that ambiguous terms of a document are to be interpreted against the party that drafted them.

*In re Fawcett,* 758 F.2d 588, 591 (11th Cir.1985); *see, e.g., In re Leis,* 198 B.R. 257, 261 (Bankr.N.D.Ohio 1996).

■ Furthermore, it is generally accepted that rights of creditors can vest under the terms of a confirmed chapter 13 plan, which rights are not divested upon dismissal or conversion to chapter 7. For example, funds distributed by a chapter 13 trustee to creditors under the terms of a confirmed plan are not recoverable by the debtor if the case is later dismissed or converted, even if those funds were derived from postpetition earnings. *See, e.g., In re Verdunn,* 210 B.R. 621, 625–26 (Bankr.M.D.Fla.1997); *In re Boggs,* 137 B.R. 408, 411 (Bankr.W.D.Wash.1992); 3 *Collier on Bankruptcy,* ¶ 349.03[1] (15th ed. rev.2008); *see also, In re Mehan,* 2000 WL 1010577, at *5 (Bankr.E.D.Pa.2000).

■ Here, the express terms of the debtors' confirmed plan authorized the trustee to distribute funds in his possession at the time of confirmation on the *earlier* of thirty days after confirmation or the resolution of all filed objections to proofs of claim. At the time of confirmation, however, there were no such objections pending.[6] Thus, the confirmed plan directed the trustee to make distribution to creditors immediately upon confirmation using the funds from the proceeds of the pre-confirmation realty sale.[7]

---

**6.** The only claims objections filed prior to confirmation, which objections were to the claims asserted by Wells Fargo Bank, N.A., and Asset Acceptance, LLC, were resolved on or before July 22, 2008. *See* docket entries # 77, 83, 92.

**7.** As mentioned above, if this plan provision is deemed ambiguous, such ambiguity would be construed against the debtors as drafters.

Such a provision is made enforceable by 11 U.S.C. § 1326(a)(2).[8] This statutory provision instructs the chapter 13 trustee to retain plan payments made by the debtor prior to confirmation until the debtor's proposed chapter 13 plan is either confirmed or denied. If denied, "the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)." If confirmed, "the trustee shall distribute any such payment in accordance with the plan as soon as is practicable."

Courts have construed section 1326(a)(2) as creating a right in creditors to receive the funds paid to a chapter 13 trustee prior to confirmation, which right vests upon confirmation unless the confirmed plan itself or the order of confirmation provide otherwise. *See In re Parker*, 400 B.R. 55, 62 (Bankr.E.D.Pa.2009); *In re Parrish*, 275 B.R. 424 (Bankr.D.D.C.2002); *see also In re Tran*, 309 B.R. 330, 336 (9th Cir. BAP 2004) (noting a distinction made by section 1326(a)(2) between funds paid to the trustee before confirmation and those paid after confirmation), *aff'd*, 177 Fed. Appx. 754 (9th Cir.2006); *In re Waugh*, 82 B.R. 394, 400 (Bankr.W.D.Pa.1988). As neither the terms of the confirmed plan nor the confirmation order altered the creditors' statutory right to payment upon confirmation provided by section 1326(a)(2), a subsequent conversion does not permit the debtors to rescind their earlier waiver of their exemption rights. *See In re Parrish*, 275 B.R. at 431 ("Because § 1326(a)(2) implicitly gave the cred-

itors the right to obtain an order preconversion to compel distribution under § 1326(a)(2), they 'have a vested right to receive those payments pursuant to the plan.' ") (quoting *In re Redick*, 81 B.R. 881, 887 (Bankr.E.D.Mich.1987)).

The debtors assert, nonetheless, that the creditors' right to payment under the terms of their confirmed plan, the confirmation order, and section 1326(a)(2) were terminated when the chapter 13 trustee transferred the funds in his possession, less his commission, upon conversion to chapter 7. They maintain that the chapter 7 trustee "has no standing to claim any right under section 1326 to distribute the debtors' money under the [confirmed] plan." Debtors' Memorandum, at 12.

This argument, however, overlooks section 348(e), providing that conversion of a chapter 13 case "terminates the services of any trustee ... that is serving in the case before conversion." Consistent with this provision, Fed. R. Bankr.P. 1019(4) directs the chapter 13 trustee to "forthwith ... turn over to the chapter 7 trustee all records and property of the estate in the possession or control of the ... trustee." *See generally Cable v. Ivy Tech State College*, 200 F.3d 467, 474 (7th Cir.1999) (Pursuant to section 348(e), "[a]t the moment the bankruptcy court granted Cable's motion to convert [from chapter 7 to chapter 13], the Chapter 7 trustee lost jurisdiction over the case.").

Although some decisions permit a chapter 13 trustee to distribute sale proceeds in his possession postconversion, when conversion to chapter 7 occurred after confir-

---

8. This paragraph provides:
 (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a

plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

mation of a plan, *see In re Simmons*, 286 B.R. 426, 431 (Bankr.D. Kan.2002); *In re Pegues*, 266 B.R. 328, 336–37 (Bankr. D.Md.2001), that issue has not been squarely addressed in this district. *See In re Mehan*, 2000 WL 1010577, at *5 ("Accordingly, I find that I do not have to reach the broader question posed by the Debtor to resolve the instant dispute, *i.e.*, whether undistributed plan payments made by a debtor to the Chapter 13 trustee prior to conversion pursuant to a confirmed plan should be distributed by the Chapter 13 trustee to creditors after conversion pursuant to the terms of the confirmed plan.").

Given the uncertainty in this district regarding a chapter 13 trustee's continued authority to make plan distributions pursuant to a confirmed plan post-conversion, I can understand the trustee's decision to follow the terms of the pre-confirmation consensual sale order: upon conversion, "any funds remaining in the possession of the standing trustee shall be transferred to the appointed Chapter 7 trustee." Motion for Summary Judgment, ex. C, at 2.

To the extent that the chapter 13 trustee literally interpreted section 348(e) and Rule 1019(4), and in so doing complied with the June 2008 sale order by transferring funds to the chapter 7 trustee upon conversion, the debtors suggest no persuasive basis that his conduct undermined any rights that creditors had in those funds. *See In re Parrish*, 275 B.R. at 431:

> [E]ven under the erroneous view that § 348(e) prevents the chapter 13 trustee from acting as a trustee even when she winds up her administration, she is still "at the very least, a custodian of funds having the duty to deliver them to the party with the best claim to them." *In re Redick*, 81 B.R. 881, 886 (Bankr. E.D.Mich.1987). Because § 1326(a)(2) implicitly gave the creditors the right to

obtain an order preconversion to compel distribution under § 1326(a)(2), they "have a vested right to receive those payments pursuant to the plan." *Redick*, 81 B.R. at 887. The result is that even after § 348(e) terminates her services, the chapter 13 trustee "is holding the undistributed funds as an agent for the creditors." *Id.* "The mere happenstance of the delay inherent in ... the preparing and mailing of checks should not defeat vested statutory rights." *Id.*

■ A declaration that, in this proceeding, the chapter 7 trustee holds the funds she obtained from the chapter 13 trustee subject to vested creditor interests is consistent with the general principle that a bankruptcy trustee takes possession of property of the debtor subject to the rights of creditors in that property, if any. *See generally In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171 (3d Cir.1996) (property in possession of the trustee but owned by a non-debtor is not property of the bankruptcy estate); *In re Gibson*, 218 B.R. 900, 903 (Bankr.E.D.Ark.1997) ("Insurance proceeds that are estate property are subject to the rights of creditors who are listed as loss payees under the policy.").

Finally, the debtors complain, in the alternative, that the chapter 13 trustee acted improperly in taking his commission from the sale proceeds without requesting an allowance of an administrative expense under sections 330, 503 and 507. Debtors' Memorandum, at 13. In other words, if the chapter 13 trustee properly transferred funds to the chapter 7 trustee upon conversion, the debtors contend that he should have transferred all of the sale proceeds paid to him without deducting his commission.

■ I find this complaint unpersuasive for two reasons.

First, the debtors fail to distinguish between the compensation methods for a standing chapter 13 trustee and a non-standing chapter 13 trustee. Only the latter need seek compensation by application under section 330(a) and is limited by the statutory ceiling found in section 326(b). Compensation for the former is addressed by section 1326(b)(2), which permits a standing chapter 13 trustee to be compensated "before or at the time of each payment to creditors under the plan ... the percentage fee fixed ... under section 586(e)(1)(B) of title 28[.]" *See* 3 *Collier on Bankruptcy,* ¶ 326.02[3][b] (15th ed. rev. 2008). Thus, a standing chapter 13 trustee need not file an application for compensation in order to obtain his statutory commission.

■ Second, the chapter 13 trustee's receipt of his statutory commission does not affect the debtors' rights in this bankruptcy case. 11 U.S.C. § 326(c) states:

> If more than one person serves as trustee in the case, the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be.

Thus, the compensation payable to the chapter 7 trustee in this case will be reduced by the amount of the commission taken by the chapter 13 trustee.[9] *See, e.g., In re Silvus,* 329 B.R. 193, 206–07 (Bankr. E.D.Va.2005); *In re Rodriguez,* 240 B.R. 912, 915–16 (Bankr.D.Colo.1999); *In re Arius, Inc.,* 237 B.R. 843, 846–47 (Bankr. M.D.Fla.1999). Indeed, the chapter 7 trustee appears to recognize her predeces-

sor's right to payment and has released the chapter 13 trustee from all claims.[10]

Therefore, the effect of the $3,100 commission taken by the chapter 13 trustee serves only to reduce permissible compensation to the chapter 7 trustee. As she does not complain, and as there is no basis to conclude that the debtors' distribution under chapter 7 will be diminished, the chapter 13 trustee's action provide no ground to deny the chapter 7 trustee the declaratory relief she now seeks or to demand turnover of the commission amount to the chapter 7 trustee.

## IV.

In sum, there are no material facts in dispute, and the chapter 7 trustee is entitled to a declaration that the funds in her possession may be distributed to pay the allowed claims of unsecured creditors without deduction of the debtors' purported homestead exemption. This will result in unsecured claims being paid in full. Despite the debtors' protestations to the contrary, this outcome is equitable.

The debtors filed a chapter 13 petition when they clearly were ineligible to do so, in an attempt to receive some of the proceeds from the sale of their realty. They feared that a chapter 7 filing would result in foreclosure and the loss of all equity in the property. Thereafter, the debtors were able to continue in chapter 13 and sell their realty by promising to pay allowed unsecured claims from the proceeds of sale. Upon that sale, they were authorized to use some of the proceeds to repay their car loans: a sum exceeding $11,000. Furthermore, even after payment of al-

---

**9.** Section 326(a) establishes a statutory ceiling for trustee compensation in chapter 7 and 11 cases. *See In re Lan Associates XI, L.P.,* 192 F.3d 109 (3d Cir.1999). The compensation ceiling in a chapter 7 case with $31,000 available for distribution is $3,850. Of that sum,

$3,100 has already been paid to the chapter 13 trustee.

**10.** The debtors have not filed any cross-claim against the chapter 13 trustee.

lowed claims in full, they would have received a surplus dividend, but for their conversion to chapter 7 and the instant litigation that ensued.[11]

Accordingly, an order shall be entered granting the plaintiff/trustee summary judgment.

---

11. It is possible that the chapter 7 counsel fees generated by this litigation will preclude the debtors' receipt of a surplus under section 726. Clearly, they would have received a surplus dividend from the chapter 13 trustee had they not converted to chapter 7.